BAR ASSOCIATION OF GREATER CLEVELAND *v.* CARLIN.

[Cite as Bar Assn. v. Carlin (1981), 67 Ohio St. 2d 311.]

(D.D. No. 81-8—Decided July 22, 1981.)

*Mr. Thomas J. LaFond, Mr. F. Wilson Chockley, Jr.,* and *Mr. Bernard J. Stuplinski,* for relator.

*Mr. William J. Coyne* and *Mr. Jack H. Hudson,* for respondent.

*Per Curiam.* DR. 7-106 provides in part:

"(C) In appearing in his professional capacity before a tribunal, a lawyer shall not:

"* * *

"(6) Engage in undignified or discourteous conduct which is degrading to a tribunal."

EC 7-36 states, in part:

"Judicial hearings ought to be conducted through dignified and orderly procedures designed to protect the rights of all parties. Although a lawyer has the duty to represent his client zealously, he should not engage in any conduct that offends the dignity and decorum of proceedings. While maintaining his independence, a lawyer should be respectful, courteous, and aboveboard in his relations with a judge or hearing officer before whom he appears.\*\*\*"

EC 9-6 states:

"Every lawyer owes a solemn duty to uphold the integrity and honor of his profession, to encourage respect for the law and for the courts and the judges thereof;\*\*\*to conduct himself so as to reflect credit on the legal profession and to inspire the confidence, respect, and trust of his clients and of the public; and to strive to avoid not only professional impropriety, but also the appearance of impropriety."

DR 7-106(A) provides:

"A lawyer shall not disregard or advise his client to disregard a standing rule of a tribunal or a ruling of a tribunal made in the course of a proceeding, but he may take appropriate steps in good faith to test the validity of such rule or ruling."

Pertinent thereto is EC 7-22 which states, in part, that "[r]espect for judicial rulings is essential to the proper administration of justice;\*\*\*"

Although the respondent acknowledged his use of improper language, he urged that his statements be placed in the environment and the context in which they arose. In this regard, he argued that the judge hearing *State* v. *Hendrix* himself usually, customarily, and frequently used vulgarities and profanities on the record. Indeed, it was alleged that there were no terms used by respondent that had not been uttered in the courtroom on prior occasions by the judge himself, frequently on the record. The defense conceded, however, that respondent's remarks were "somewhat salty" and might be "offensive to the common, ordinary judicial process that most of us are used to." The defense contended that since the precedent was set in the courtroom by the judge himself, the language was excusable when viewed in that light.

Relator read into the record some 70 pages out of the total

2,500 pages in the *Hendrix* proceeding. The defense offered part of another transcript from an entirely different trial that the judge had presided over several weeks prior to the *Hendrix* matter to demonstrate the trial judge's predilection for vulgarity.

The proof was ample that respondent engaged in extremely coarse speech on the record, both in and out of the presence of the jury.[1] The record further reflects that respondent characterized court orders as "capricious" and "whimsical," and repeatedly accused the court of favoritism to opposing counsel and bias against himself.[2] There is substantial evidence of the respondent showing disrespect to the court.[3]

This court stated in *State* v. *Wilson* (1972), 30 Ohio St. 2d 312, at pages 314-315:

"The integrity of the judicial process demands total deference to the court, particularly on the part of its officers. Respect for the law and obedience to the orders and judgments of the tribunals by which it is enforced lies at the very foundation of our society. No amount of provocation on the part of the judge can be permitted to excuse counsel from the obligation of his oath of office ('I will maintain the respect due to courts of justice and judicial officers'); to excuse him from his duties imposed by the Code of Professional Responsibility; or to condone the acts of counsel if in fact they are in themselves contemptuous.

"If a judge behaves contumeliously, reprehensible as it

---

[1] Respondent contends, however, that his comments were not made within hearing distance of the jury.

[2] For example, the transcript reflects the following exchanges:

"The Court: This Court has been very, very fair.

"Mr. Carlin: That's a bunch of bunk, and you know it. Don't hand me that stuff.

"The Court: This Court has been most fair with you and has bent over backwards to be fair to you.

"Mr. Carlin: That's a goddamned lie."

"The Court: Mr. Carlin, this Court has been most fair and unbiased and unprejudiced.

"* * * *

"Mr. Carlin: I want the Court of Appeals to look at the Shanghai job that is being done in this -- "

[3] *E.g.,* "Mr. Carlin:* * *

"Let the record reflect that the Judge is an unmitigated liar, unmitigated, unequivocal liar."

may be, such conduct should be made a part of the record, but cannot be corrected by counsel in the courtroom. There are other remedies for transgressions of judicial decorum, none of which is exclusive—such as appellate review, grievance proceedings under our Rules, impeachment and the election process, for example."

The record is replete with examples of conduct supporting the allegations of relator's complaint. This court will not tolerate an attorney's engaging in such persistent, derogatory attacks on a judicial officer and, thus, on the decorum of the judicial process itself. Although the board of commissioners recommended that respondent be publicly reprimanded, it is our judgment that respondent's conduct warrants his suspension from the practice of law for a period of one year pursuant to Gov. R. V(6).

*Judgment accordingly.*

CELEBREZZE, C. J., P. BROWN, SWEENEY, LOCHER, HOLMES and C. BROWN, JJ., concur.

W. BROWN, J., not participating.