OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.


Office of Disciplinary Counsel v. Grimes.
[Cite as Disciplinary Counsel v. Grimes (1993),     Ohio
St.3d    .]
Attorneys at law -- Misconduct -- Public reprimand -- Engaging
     in conduct adversely reflecting on one's fitness to
     practice law -- Engaging in undignified or discourteous
     conduct degrading to a tribunal.
     (No. 93-455 - - Submitted April 6, 1993, -- Decided July
7, 1993.)
     On Certified Report by the Board of Commissioners on
Grievances and Discipline of the Supreme Court, No. 92-44.
     In a complaint filed August 17, 1992, relator, Office of
Disciplinary Counsel, charged respondent, Richard E. Grimes of
Norwalk, Ohio, Attorney Registration No. 0006381, with two
counts of misconduct including, inter alia, violations of DR
1-102(A)(6) (engaging in conduct adversely reflecting on one's
fitness to practice law) and 7-106(C)(6) (engaging in
undignified or discourteous conduct degrading to a tribunal).
Respondent admitted most of the factual allegations of the
complaint, but denied that his actions constituted misconduct.
The parties waived hearing in this matter, and a panel of the
Board of Commissioners on Grievances and Discipline of the
Supreme Court considered the case upon the parties' agreed
stipulation of facts and recommendation that respondent be
publicly reprimanded.
     The stipulation shows that respondent was admitted to the
practice of law in 1977 and has been associated with the law
firm of Miller & Fegen Co., L.P.A., since 1978.  One of the
partners of that firm, Michael R. Fegen, is the part-time Huron
County Prosecuting Attorney, and respondent has served as a
part-time assistant prosecutor since 1985.  In that capacity,
he was assigned to prosecute the Norwalk City Law Director, who
was indicted on July 15, 1991.  The parties stipulated that the
case was "controversial, received substantial publicity, and
was a source of disagreement among members of the local bench
and bar."
     As to Count I of the complaint, the stipulation provides
that the prosecutor's office filed charges in May 1991 against

a nineteen-year-old individual for contributing to the delinquency of a minor.  No prosecutors were available on the scheduled hearing date and the juvenile court judge, Thomas E. Heydinger, refused a request for continuance, requiring the prosecutor's office to file a motion for dismissal on July 11, 1991.

On or about July 19, 1991, a reporter for The Lorain Journal contacted respondent regarding the above case and, during the course of their conversation, respondent referred to Judge Heydinger as a "sonofabitch."  The reporter's published article quoted respondent as stating:  "Your source is that sonofabitch Heydinger.  Why don't you get your information from him?"  Respondent has since made a public apology to the judge.

As to Count II, the stipulation provides that Fegen, in his private practice, filed a case against the Ohio Bureau of Motor Vehicles ("OBMV") in Norwalk Municipal Court.  The municipal court judge, John S. Ridge, had previously expressed his concern that it was a conflict of interest for Fegen to represent private clients in such cases.  On the day preceding the hearing, respondent arranged for another attorney, not associated with his office, to handle the case.  This attorney, although present on the date of hearing, had not filed a notice of appearance, and Judge Ridge insisted that someone from Fegen's office appear.  Fegen was out of the county on that particular date, so respondent complied with the judge's request.  The indicted city law director was also present at the hearing, representing OBMV, and respondent believed that the law director's indictment was one of the underlying reasons for being summoned to Judge Ridge's courtroom.

Judge Ridge began the hearing by questioning respondent as to Fegen's whereabouts.  Respondent expressed confusion about being summoned to court when arrangements had already been made for another attorney to handle the case and referred to the judge's inquiry as a "silly game" and a "charade."  Judge Ridge confirmed with the other attorney that he had been contacted to handle the case, and then continued to question respondent as to Fegen's apparent conflict:

"THE COURT:                    Okay, and Mr. Fegen is the Huron County prosecutor, and was at the time you filed this action; is that correct?

"MR. GRIMES:                    I guess you're, you have an inept ability for the obvious, Your Honor.

"THE COURT:                    Mr. Grimes, do you and your Prosecutor's office understand the code of ethics, professional ethics?

"MR. GRIMES:                    I find it fascinating that we're questioning that, given the fact that that man sitting right there is under indictment, representing the State of Ohio.

"THE COURT:                    Mr. Grimes, speak to me, not Mr. Weinman.

"MR. GRIMES:                    I made an observation.  I made an observation, I find it incredibly fascinating.

"THE COURT:                    Mr. Grimes, first off, first off we're not addressing any other case than this one.

"MR. GRIMES:                    But you're the judge sitting on both cases, Your Honor."

The exchange between the court and respondent continued

with respondent eventually conceding that it was inappropriate for his law office to file actions against OBMV.

The parties further stipulated that any inappropriate statements made by respondent were the "result of emotional stresses created by a set of unusual circumstances that are unlikely to recur." Correspondence from Fegen, attached to the stipulation, corroborated the stress respondent was under from prosecuting the city law director, and further indicated that respondent had since returned to "his old affable self." In addition, Huron County Common Pleas Judge Phillip M. White, Jr. wrote that respondent was "a responsible, conscientious person with the highest moral integrity," and was someone who "has always been courteous and respectful in his behavior before me individually and as Common Pleas Judge." It was also stipulated that respondent has no prior disciplinary record.

As to Count I, the panel found that respondent's remark to the newspaper reporter violated DR 1-102(A)((6) and, as to Count II, found that respondent's conduct before Judge Ridge violated DR 7-106(C)(6).1 In considering the appropriate sanction, the panel noted two other cases involving violations of DR 7-106(C)(6), in which the respondents were given one-year suspensions. See Bar Assn. of Greater Cleveland v. Carlin (1981), 67 Ohio St.2d 311, 21 O.O.3d 195, 423 N.E.2d 477; Bar Assn. of Greater Cleveland v. Milano (1984), 9 Ohio St.3d 86, 9 OBR 315, 459 N.E.2d 496. The panel distinguished those cases as involving the repeated use of obscenities and direct, personal attacks on a judge. Noting that the instant case involved outside pressures under peculiar circumstances which were not likely to be repeated, the panel recommended that respondent be given a suspended six-month suspension. The board adopted the findings and conclusions of the panel; however, noting the degree of misconduct committed and the role played by the municipal judge, recommended that respondent be publicly reprimanded.

J. Warren Bettis, Disciplinary Counsel, and Dianna L. Chesley, Assistant Disciplinary Counsel, for relator.
Mark H. Aultman, for respondent.

Per Curiam. We find that respondent committed the misconduct found by the board and concur with its recommendation. Respondent is hereby publicly reprimanded. Costs taxed to respondent.

Judgment accordingly.

Moyer, C.J., A.W. Sweeney, Douglas, Wright, Resnick and F.E. Sweeney, JJ., concur.
Pfeifer, J., dissents.

FOOTNOTE
1    This rules was inadvertently denominated DR 7-106(B)(6) by the panel and the board.
Pfeifer, J., dissenting.    I would dismiss the complaint against the respondent. The conduct at issue was not only out of character but was also inconsequential.
Regarding Count I of the complaint, which of us who have ever practiced law has not muttered a choice epithet about our

favorite judge?  More important, which of us who are judges has not done something to earn an occasional raspberry?  It is obvious in this case that the respondent did not expect his mild outburst to be quoted in the newspaper.  Respondent self-administered the appropriate disciplinary measure by publicly apologizing to Judge Heydinger.

Speaking of judges earning epithets, Judge Ridge baited the respondent into making the comments that were the basis of Count II of the complaint.  Judge Ridge's actions and comments were outrageous and precipitated respondent's barbed response. If anyone were to be reprimanded based upon the facts in Count II, it ought to have been Judge Ridge.

Finally, I am always concerned to see a lawyer reprimanded for his speech.  Our legal system relies upon vigorous advocacy, which occasionally leads to spirited interplay between lawyers and judges.  We ought not rule in a way that may affect that friction.