## IN RE APPLICATION FOR DISCIPLINE OF L. A. PAULSRUDE.

248 N. W. 2d 747.

December 17, 1976—No. 45922.

*R. Walter Bachman, Jr.,* Administrative Director on Professional Conduct, *R. B. Reavill* and *Robert H. Meier,* for petitioner. *L. A. Paulsrude,* pro se, for respondent.

Considered and decided by the court en banc.

PER CURIAM.

This is a disciplinary proceeding involving attorney Luther A. Paulsrude of Dodge Center, Minnesota. Hearings were held in Rochester on March 22 and 23, 1976, before the Hon. Luther Sletten, retired judge of the Fourth Judicial District, acting as referee. Following the hearings, Judge Sletten made findings of fact and conclusions, and recommended that Paulsrude be barred from trying cases in Minnesota district or county courts, but that he otherwise be allowed to carry on a general law office practice and a limited probate practice. Judge Sletten also recommended that Paulsrude be placed on probation for 18 months, with the understanding that any violations of the Code of Professional Responsibility during that time would result in total disbarment. Paulsrude has filed a petition with this court requesting complete reinstatement of his license to practice law.

On October 4, 1976, oral arguments were heard by this court. Petitioner Paulsrude appeared pro se. The Minnesota Board of Professional Responsibility (Board) was represented by its former director, R. B. Reavill, and petitioned for disbarment.

The record discloses the following findings of the referee:

"FINDINGS OF FACT

"I.

"That Respondent, L. A. Paulsrude, since October 2, 1936, has been and is an attorney at law, duly licensed to practice in Minnesota, and that he has conducted his law practice as a sole practitioner in Minnesota since that time and has been practicing law in Dodge Center, Minnesota, since 1946.

"That since his admission to the State Bar of Minnesota, Respondent has engaged in the general practice of law.

"That during all of the years that Respondent has lived in Dodge Center, Minnesota, Respondent has been active in his church and in several civic and community organizations and projects.

"II.

"COMPLAINT NO. 1

"That on October 21, 1973, Respondent appeared in Dodge County Court to present, on behalf of himself, a claim against the estate of one Virgil Louks, the Honorable Gerard W. Ring presiding. That at the conclusion of the presentation of evidence no ruling on Respondent's claim was made by Judge Ring. However, Respondent's claim was subsequently disallowed by Judge Ring.

"That after Court was adjourned and while Judge Ring was leaving the court room, and in the presence of persons remaining in the court room, Respondent said the following, according to the transcript taken by Deputy Clerk Twila Goodman (Petitioner's Exhibit 5), and according to the testimony given by Twila Goodman:

" 'Court is adjourned.

" 'Mr. Paulsrude: It is adjourned now. It's nothing but a God-damned horse's ass.

" 'Judge Ring: I would suggest, Mr. Paulsrude, that you proceed with caution.

" 'Mr. Paulsrude: The Court is a horse's ass. * * * If the Court please—

" 'Judge Ring: I would suggest, Mr. Paulsrude, if you are dissatisfied, that you should file an appeal—

" 'Mr. Paulsrude: No, that isn't necessary. There is no point in filing an appeal—against me. I want to find out from you.'

"That Respondent Paulsrude admitted calling Judge Ring at that time a 'horse's ass.'

"III.

"COMPLAINT NO. 2

"That on May 22, 1972, Respondent drafted a promissory note naming himself as payee and providing for interest at the rate of nine percent (9 per cent) per annum, which note was executed by one John Chicos (Petitioner's Exhibit No. 20). That the aforesaid note was secured by a mortgage.

"That Respondent Paulsrude knew that the note in question was in excess of the Minnesota legal rate of interest and was usurious.

"IV.

"COMPLAINT NO. 3

"That on September 25, 1973 and October 3, 1973, Respondent wrote and mailed letters (Petitioner's Exhibits 21 and 22) to one Harry Martin, Claremont, Minnesota.

"That at the time of Respondent's writing the aforesaid letters Harry Martin was a potential witness in a case then pending against Respondent Paulsrude in the Dodge County District Court.

"That the aforesaid letters constituted a threat and intimidation against Harry Martin if he appeared as a witness against the Respondent.

"V.

## "COMPLAINT NO. 4

"That sometime during 1969-1970 Respondent appeared as attorney for a client before the Honorable Robert A. Neseth in Dodge County, Minnesota, and that the case involved a misdemeanor count against his client. The ruling by the Court was adverse to Respondent's client.

"That subsequent to the ruling by the Court, Respondent slammed his books on the counsel table and made the remark that this was a 'kangaroo court.' Respondent was ordered to leave the court room but refused to leave and was escorted from the court room by a Deputy Sheriff.

"Respondent denies that the aforesaid occurred in Judge Neseth's Court.

"VI.

## "COMPLAINT NO. 5

"That Respondent prepared a Summons and Complaint, dated July 31, 1973, in an Unlawful Detainer action entitled 'Dennis and Jean Weitzenkamp against William and Shirley Worden.' That said Summons indicated on its face that it had been duly signed by the Honorable Robert A. Neseth, Municipal Judge, Dodge County, Minnesota, and had been duly filed with Judge Neseth.

"That the aforesaid Complaint had not been filed in the Dodge County Court House, the required filing fees had not been paid, and that the aforesaid Summons had not been signed by Judge Neseth.

"That Respondent was the person who handed copies of the aforesaid Summons and Complaint to Defendants Worden at his office in Dodge Center, Minnesota.

"That on August 6, 1973, the date set in the Summons for hearing at Mantorville, the Defendants Worden appeared and were informed that the aforesaid Summons and Complaint had not been duly filed or issued.

## "VII.

### "COMPLAINT NO. 6

"That Respondent brought an action in Olmsted County on behalf of one Russell Bentley versus Kenneth Anderson. That said action was predicated on a lease agreement executed on January 30, 1974 between Bentley as lessor and Anderson as lessee whereby Anderson was to pay Bentley as follows: $900.00 on June 1, 1974 and $900.00 on November 1, 1974. That a Writ of Attachment had been filed against the lease property in connection with a suit brought against Bentley by Bentley's former wife. That because of the aforesaid suit and Writ of Attachment, the lease also contained a provision that Bentley would obtain an agreement from Bentley's former wife that Anderson's use and possession of the premises would not be interrupted during the term of the lease.

"That subsequent to the execution of the aforesaid lease, Bentley and Anderson, in each other's presence and in the presence of the attorneys representing the parties involved, orally agreed that the June 1, 1974 and November 1, 1974 payments of $900.00 each would be deposited into Attorney Thomas Healy's Trust Account rather than paid directly to Bentley. That the aforesaid oral agreement was later reduced to writing by the attorneys involved. That the two payments of $900.00 each were made promptly as per the terms of the lease and were deposited in Attorney Healy's Trust Account.

"That on November 2, 1974, the Respondent brought an action on behalf of Bentley versus Anderson for $1,800.00, the amount indicated in the terms of the lease.

"That before the commencement of the aforesaid action for $1,800.00, Respondent and Bentley knew all of the aforesaid facts.

"That Respondent and Bentley maliciously commenced the action against Anderson for recovery of money allegedly due pursuant to said lease, when Respondent and Bentley both knew that Anderson had in fact paid the rent due pursuant to said lease,

and pursuant to the modification and amendment to said lease as aforementioned. (See Petitioner's Exhibit No. 16 re correspondence with Respondent.)

"VIII.

"COMPLAINT NO. 7

"That on September 9, 1974, a Summons and Complaint entitled 'L. A. Paulsrude versus Marion Stafford' (Petitioner's Exhibit No. 17) was served on defendant, asking for $900.00 property damage, plus $5,000.00 for Respondent being deprived of the full use of his law office, alleging that Defendant Stafford also acted maliciously and wantonly.

"That the undisputed facts are that Defendant Stafford, while doing some shopping, left her motor vehicle, with its motor running, on Main Street in Dodge Center. That somehow the car's reverse gear was engaged and it backed down the street and ran into Respondent's office building. That defendant Stafford was insured with the Farm Bureau Mutual Insurance Company and was represented in settlement negotiations and eventual court trial by Attorney Michael B. Goodman of Rochester, Minnesota.

"That by letter received by Goodman from Respondent on March 10, 1975 (Petitioner's Exhibit 12), Respondent wrote as follows: '* * * All you have to do is * * * inform the company to settle for $2,500.00, and I'll send you $700.00 on the side. Yours, L.A.P.'

"That Respondent admits sending said letter.

"That Respondent's case was eventually tried and a jury verdict of $788.00 was awarded to Respondent."

The "CONCLUSIONS" of the referee indicate that in the matters involved in the complaints Mr. Paulsrude's conduct violated both Minnesota statutes and the Disciplinary Rules of the Code of Professional Responsibility.

The Board bases its recommendation for disbarment, in contrast to the referee's suggested restricted practice and courtroom status, on the fact that most of the misconduct occurred outside the courtroom and not as a result of courtroom pressures

that might naturally weigh upon a man 65 years of age with certain health problems. Its argument asserts:

"We submit that a lawyer who, over a period of many years, has developed the attitudes found to have been developed by Respondent here, cannot, at age 65, change those attitudes so as to make him a competent attorney for practice in any field of the law. To think otherwise is merely wishful thinking."

We agree. The flagrant misconduct exhibited in this case compels us to reject Paulsrude's request for "a total dismissal of these proceedings." Our cardinal obligation to protect the public, the profession, and the courts, in furtherance of the administration of justice, requires that we disbar him from the practice of law.

We said in In re Application for Discipline of Raskin, 307 Minn. 233, 236, 239 N. W. 2d 459, 461 (1976):

"* * * Canon 1 provides that a lawyer should assist in maintaining the integrity and competence of the legal profession. Disciplinary Rule 1-102(A)(4) prohibits a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation and makes no distinction between misconduct involving clients and other persons."

It is therefore this court's opinion that the record mandates disbarment in that L. A. Paulsrude is unable to professionally practice in any branch of law.

Let judgment of disbarment be entered.