UNITED STATES of America, Appellee,

v.

Jonathan COOPER,
Defendant, Appellee.

In re Norman ZALKIND,
Petitioner, Appellant.

No. 88-1283.

United States Court of Appeals,
First Circuit.

Heard Oct. 5, 1988.

Decided March 31, 1989.

Albert F. Cullen, Jr., Boston, Mass., for petitioner, appellant.

Theodore I. Koskoff, Karen E. Koskoff, Carey B. Reilly and Koskoff, Koskoff & Bieder, Bridgeport, Conn., on brief, for the Nat. Ass'n of Crim. Defense Lawyers, amicus curiae.

Gene D. Dahmen, Terry Philip Segal and Brownlow M. Speer, Boston, Mass., on brief, for the Boston Bar Ass'n, amicus curiae.

John Henn and Foley, Hoag & Eliot, Boston, Mass., on brief, for American Civ. Liberties Union, Rhode Island Affiliate, and Civil Liberties Union of Massachusetts, amici curiae.

Kenneth P. Madden, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on brief, for the U.S.

Before COFFIN and TORRUELLA, Circuit Judges, BROWN,* Senior Circuit Judge.

JOHN R. BROWN, Circuit Judge.

Attorney Norman Zalkind (Zalkind), of Boston, Massachusetts is appealing an Order of Reprimand based on the district court's determination that he had violated various provisions of the Code of Professional Responsibility of the Supreme Court of Rhode Island [1] while appearing *pro hac vice* for a client. We reverse the lower court's determination that Attorney Zalkind violated the adopted Rhode Island rules for attorney conduct and vacate the Order of Reprimand.

> *Double, double toil and trouble;*
>
> *Fire burn and cauldron bubble*

The conduct of Attorney Zalkind which we now review occurred in the course of

---

* Of the Fifth Circuit, sitting by designation.

1. Rule 4(d) of the Local Rules of the United States District Court for the District of Rhode Island provides:

The Code of Professional Responsibility of the Supreme Court of the State of Rhode Island shall be the standard of conduct for all attorneys practicing before this court.

his *pro hac vice* representation of his client, Jonathan Cooper, in the District of Rhode Island. The events leading up to this appeal have been chronicled in adequate detail in prior published decisions. *See In re Cooper*, 821 F.2d 833 (1st Cir. 1987), *United States v. Cooper*, 662 F.Supp. 913 (D.R.I.1987); *United States v. Cooper*, 675 F.Supp. 753 (D.R.I.1987). Therefore, we will repeat only the most basic storyline to provide a framework for review of the issues before us.

In January 1978, Attorney Zalkind's client Cooper filed a pretrial motion to dismiss the drug offense indictment against him, or in the alternative exclude the testimony of a Government witness. Four days of evidentiary hearings were held in which considerable oral testimony including that of 4 attorneys and the witness the defense sought to exclude. On April 10, 1987, Defendant Cooper's motion was denied in an opinion read from the bench. Twenty days after the denial of the motion, Attorney Zalkind filed a motion to recuse the trial court judge grounded in 28 U.S.C. §§ 144 and 455(a). The motion included a supporting memorandum of law and affidavit signed by Attorney Zalkind and other counsel involved in the case. The affidavit stated that the tenor of the judge's opinion denying the motion to dismiss or exclude testimony went beyond proper judicial comment about counsel. More specifically, the affidavit asserted that the judge had "staunchly defended" members of the Rhode Island Bar in a manner suggestive of predetermination to reject evidence presented by out-of-state defense counsel, and had also shown undue animosity toward defense counsel. The trial judge denied the motion to recuse and on June 9, 1987, this Court denied Cooper's writ of mandamus to require the judge to recuse himself. 821 F.2d 833.

The saga does not end here, rather—for purposes of our review—a new chapter commences with the trial judge's strong reaction to Mr. Zalkind's supporting affidavit. In a May 19, 1987 order the trial judge concluded that "by his preparation and submission of this unwarranted and unjustified affidavit, Mr. Zalkind has engaged in *un-ethical conduct.*" 669 F.Supp. at 39. Specifically, the trial judge found that Attorney Zalkind had violated the Rhode Island Code of Professional Responsibility by knowingly making false statements of fact including a false accusation against a judge, and by engaging in conduct prejudicial to the administration of justice that casts serious doubt on his fitness to practice law. In finding these to be *prima facie* violations of the Rhode Island Code, the trial judge evaluated Mr. Zalkind's affidavit as "false in some particulars, totally irrelevant to any § 144 issues, obviously made in bad faith and a scurrilous, scandalous personal attack on the integrity of this Court." 669 F.Supp. at 39.

The trial judge ordered Attorney Zalkind to show cause why he should not be found in violation of those rules and furthermore, if violated, why his *pro hac vice* status should not be revoked. *Id.* at 38. The trial judge in September 1987 then transferred the disciplinary matter to Chief Judge Boyle. 675 F.Supp. at 763.

Local Rule 4(e)(1) requires that an attorney facing disciplinary charges have an opportunity to be heard before a panel composed of all active judges of the court before disciplinary action is taken. Since the District of Rhode Island then had only two active judges (the Chief Judge and the trial judge), the Chief Judge comprised the "panel" responsible for hearing Attorney Zalkind's response to the show cause order and determining whether he had violated the Code of Professional Responsibility.

A three-day hearing was held in February 1987 during which Attorney Zalkind and additional witnesses testified with respect to the circumstances under which the motion to recuse and supporting affidavit were drafted and the factual background underlying the assertions made in Attorney Zalkind's affidavit. The Chief Judge found Attorney Zalkind guilty of misrepresentation, conduct prejudicial to the administration of justice, conduct adversely reflecting on his fitness to practice law, knowingly making a false statement of law or fact, and knowingly making a false accusation

against a judge.[2] The court issued a formal reprimand order which Attorney Zalkind appeals.

### Courtroom Menage a Trois

The merits of this case cannot be reviewed in a vacuum because our decision has critical implications on a defendant's Sixth Amendment right to be heard before an impartial judge and to be vigorously represented by counsel. This right was recognized in *Holt v. Virginia*, 381 U.S. 131, 85 S.Ct. 1375, 14 L.Ed.2d 290 (1965), when the Supreme Court reversed a $50 fine and contempt conviction imposed on counsel whose motion for change of venue was denied. "The right to be heard must necessarily embody a right to file motions and pleadings essential to present claims and raise relevant issues. And since '[a] fair trial in a fair tribunal is a basic requirement of due process,' ... motions for change of venue to escape a biased tribunal raise constitutional issues both relevant and essential." *Holt*, 381 U.S. at 136, 85 S.Ct. at 1375, 1378, 14 L.Ed.2d 290, 293–94 (citations omitted).

The lower court in its order of reprimand was also mindful of the fact that vigorous advocacy is essential to our system of justice. But it cautioned that "[c]harges recklessly made against the court are not entitled to the protection of the right to advocate. There is no right to advocate untruth. There can be no right in the name of advocacy to conjure up imagined wrongs and sling them with nothing but vindictive purpose."[3]

Indeed the lower court correctly instructs that an attorney is not free to say literally anything and everything imaginable in a courtroom under the pretext of protecting his client's rights to a fair trial and fair representation. *See, e.g., In re Little*, 404 U.S. 553, 92 S.Ct. 659, 30 L.Ed.

2d 708 (1972); *Bar Ass'n of Greater Cleveland v. Carlin*, 67 Ohio St.2d 311, 423 N.E.2d 477 (1981); *In re Friedland*, 268 Ind. 536, 376 N.E.2d 1126 (1978); *In re Paulsrude*, 311 Minn. 303, 248 N.W.2d 747 (1976). Nor may an attorney seek refuge within his own First Amendment right of free speech to fill a courtroom with a litany of speculative accusations and insults which raise doubts as to a judge's impartiality. *See, e.g., In re Sawyer*, 360 U.S. 622, 646–47, 79 S.Ct. 1376, 1388, 3 L.Ed.2d 1473, 1489 (1959) (Stewart, J., concurring) ("Obedience to ethical precepts may require abstention from what in other circumstances might be constitutionally protected speech."). *See generally* Annotation, *Attorney's Criticism of Judicial Acts as Grounds of Disciplinary Action*, 12 A.L. R.3d 1408, 1412–14 (1967 & 1988 Supp.); Note, *Restrictions on Attorney Criticism of the Judiciary: A Denial of First Amendment Rights*, 56 Notre Dame Law. 489 (1981). Yet no easy bright line can be drawn to measure when an attorney has gone too far, but "[t]rial courts ... must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice." *In re Little*, 404 U.S. 553, 555, 92 S.Ct. 659, 660, 30 L.Ed.2d 708, 711 (1972) (quoting *Brown v. United States*, 356 U.S. 148, 153, 78 S.Ct. 622, 626, 2 L.Ed.2d 589, 595 (1958)).

As in *Holt* and *Little*, there is no charge that Attorney Zalkind conducted himself in a manner contrary to a court order or attempted to obstruct justice by preventing the judge from carrying on his court duties. The decorum of the court was maintained while Attorney Zalkind challenged, by means of a statutorily prescribed motion, the propriety of the trial judge hearing his client's case. A motion to recuse a trial judge is inherently offen-

---

**2.** The United States Attorney who ultimately prosecuted this disciplinary action initially argued that the issue was moot since Zalkind had withdrawn as counsel and therefore no longer had *pro hac vice* status. The lower court determined the disciplinary action was a live controversy since the issue was whether a disciplinary

infraction had occurred. The court concluded that Zalkind's withdrawl only narrowed range of applicable sanctions and did not render the issue moot.

**3.** Manuscript opinion at 19 (citing *In re Troy*, 43 R.I. 279, 290–91, 111 A. 723 (1920)).

sive to the sitting judge[4] because it requires the moving party to allege and substantiate bias and prejudice—traits contrary to the impartiality expected from a mortal cloaked in judicial robe. Yet the fair administration of justice requires that lawyers challenge a judge's purported impartiality when facts arise which suggest the judge has exhibited bias or prejudice. The appropriate mechanism for such a challenge is a motion to recuse.

Attorney Zalkind jumped through all the right hoops—procedurally speaking—to raise the issue of the trial judge's fitness to hear the case. Indeed he has a duty to his client and to our system of justice to jump through those hoops *so long as* his affidavit in support of the motion to recuse was made in good faith and made no factual misrepresentations.

### Faith, Good? or Bad?

Attorney Zalkind urges this Court to reverse the lower court's conclusions that he falsely represented to the court that his affidavit was made in good faith, and that the trial judge had a "pervasive and irremediable bias" in matters concerning criticism of members of the Rhode Island Bar.

While the nature of the infraction might suggest that we need to consider the falsity of Attorney Zalkind's statements upon appeal, we think this unnecessary in light of the absence of a finding by the Chief Judge that Attorney Zalkind falsely represented in his affidavit that the trial judge displayed bias and predetermination to reject evidence proferred by defense counsel. The Chief Judge specifically stated:

> "The Court is satisfied that Mr. Zalkind did not know that his accusation of 'predetermination' and 'pervasive and irremediable bias' were false in the literal language of the Canons of Ethics. The Court is as well satisfied that Mr. Zalkind did not know that his accusations were true. The fact is that the accusa-

tions were made with reckless indifference to the truth and in utter disregard of whether or not they were the truth."[5]

As the Chief Judge's language suggests, an affidavit supporting a motion to recuse does not offer counsel a safe haven for taking pot shots at trial judges. We do not condone, nor does the code of professional conduct condone, wild, unsubstantiated accusations of judicial bias in language and tone unbecoming to the profession and unfit for the courtroom.[6] Thus, it is through the requirement that the affidavit and its assertions be made in good faith that defense counsel are allowed the limited freedom to assert their clients' constitutional right to an impartial tribunal, but not given free rein to engage in unprofessional mudslinging.

Three of the five disciplinary charges against Attorney Zalkind require a finding of knowing misrepresentation, and the remaining two violations were predicated by the Chief Judge on Zalkind's allegedly improper motive in bringing the motion to recuse. Consequently, we conclude the disposition of all charges hinge on the specific finding of bad faith, more accurately the absence of good faith. *See Oklahoma Bar Ass'n. v. Porter*, 766 P.2d 958 (Okla.1988).

█ Considering the whole record, the need for spirited advocacy in the defense of criminal charges and the strong reaction expressed by the trial judge, we are convinced that there is insufficient evidence that Attorney Zalkind's affidavit was made in bad faith. Although the motion to recuse or disqualify the trial judge was ultimately unsuccessful, that lack of success does not translate into evidence that the averments of bias and prejudice in Attorney Zalkind's affidavit were made in bad faith.

The record shows that Attorney Zalkind and his partner thoroughly investigated the legal basis for the motion to recuse and the factual basis for the affidavit. Fault cannot be found with that careful and thorough approach. Attorney Zalkind's testi-

---

**4.** *Holt v. Virginia*, 381 U.S. at 137, 85 S.Ct. at 1378, 14 L.Ed.2d at 294.

**5.** Manuscript opinion at 17.

**6.** *See, e.g., In re Kelly*, 808 F.2d 549 (7th Cir. 1986).

mony with respect to his motivation in preparing and signing the affidavit is uncontradicted and raises no doubt as to his good faith belief that he was acting within the bounds of propriety in protecting his client's fundamental rights.

Even if one applies an objective standard of good faith, as urged by the Government,[7] there is insufficient evidence that Zalkind lacked good faith. The affidavit itself and testimony as to the steps taken in its preparation are relevant to a finding of objective good faith. The signatures of co-counsel on the motion to disqualify and the supporting memorandum which recited the averments in Attorney Zalkind's affidavit attest to those attorneys' belief that the motion was ethical and proper and that they themselves had fulfilled their 18 U.S. C. § 3162(b)[8] obligations. Also, two witnesses—a practicing attorney known to Attorney Zalkind and a professor of criminal law—after review of all the relevant documents opined without reservation that *not only was it ethical and proper* for Attorney Zalkind to file the motion, but more importantly that it was necessary for him to do so to assure his client effective assistance of counsel.

Since we find the evidence of lack of good faith insufficient, we conclude that the Chief Judge erred in holding that Attorney Zalkind violated the dictates of the Rhode Island Code of Professional Responsibility.

*Don't Throw Caution To the Wind*

We conclude this saga with an emphatic reminder to counsel that they indeed are subject to disciplinary sanctions under relevant codes and rules of professional con-

duct when their behavior in the course of representing a client offends these professional standards. We do not endorse the notion that an attorney can do or say anything and everything imaginable within the course of client representation under the guise of vigorous representation of his client. However, the fair administration of justice provides a valuable right to challenge in good faith the neutrality of a judge who appears to be biased against a party. Lawyers using professional care, circumspection and discretion in exercising that right need not be apprehensive of chastizement or penalties for having the advocative courage to raise such a sensitive issue to assure the client's right to a fair trial and the integrity of our system for administering justice.

In conclusion, we reverse the Chief Judge's order and vacate the order of reprimand.

REVERSED AND VACATED.

---

7. In support of the objective test the Government urges an analogy to F.R.Civ.P. Rule 11 which imposes an objective standard of reasonableness. We have doubts as to whether analogy to Rule 11 is appropriate given the more severe consequences of a disciplinary sanction, but note that the Tenth Circuit rejected the subjective test when considering DR 1–102(A)(4), DR 1–102(A)(5) and DR 7–102(A)(5) violations. *Disciplinary Proceedings of Phelps,* 637 F.2d 171, 176 (10th Cir.1981). We decline to resolve this objective verses subjective test question, since we find no evidence that Attorney Zalkind failed to pass either test.

8. Section 3162(b) provides in pertinent part:
In any case in which counsel for the defendant or the attorney for the Government ... (2) files a motion solely for the purpose of delay which he knows is totally frivolous and without merit; (3) makes a statement for the purpose of obtaining a continuance which he knows to be false and which is material to the granting of a continuance; or (4) otherwise willfully fails to proceed to trial without justification consistent with section 3161 of this chapter, the court may punish any such counsel or attorney....