**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Wilfredo ROSARIO–CAMACHO, Luis Rodriguez–Sostre, Josue Perez–Mercado, Ramon Maysonet–Soler, Jose Negron–Sostre, Defendants.**

**Criminal No. 08–310 (FAB).**

United States District Court,
D. Puerto Rico.

March 22, 2010.

David Ramos–Pagan, Jorge L. Armenteros–Chervoni, San Juan, PR, for Defendant Jose Rodriguez–Vega also known as Cucuso.

Edgar R. Vega–Pabon, Vega Pabon Rodriguez Encarnacion & Lopez Covas, San Juan, PR, for Defendant Luis M. Sostre–Miranda also known as Manny.

Francisco M. Dolz–Sanchez, Francisco M. Dolz Law Office, San Juan, PR, for Defendant Wilfredo Rosario–Camacho also known as Tito Kilo.

Mariangela Tirado–Vales, Mariangela Tirado Vales Law Office, San Juan, PR, for Defendant Luis Rodriguez–Sostre also known as Omar Lexus.

Luis R. Rivera–Rodriguez, Luis Rafael Rivera Law Office, Ovidio E. Zayas–Perez, Zayas Perez Law Office, San Juan, PR, for Defendant Jose Cruz–Lugo also known as Che.

Jorge Luis Gerena–Mendez, Gerena Mendez Law Office, San Juan, PR, for Defendant Roberto Rosario–Colon also known as Trillizo.

Miriam R. Ramos–Grateroles, San Juan, PR, for Defendant Josue Perez–Mercado.

Alexander Zeno, Washington, DC, Ludwig Ortiz–Belaval, Ortiz & Rodriguez Law Office, Carla Arraiza–Gonzalez, San Juan, PR, for Defendant Orlando Torres–Landron also known as Gordo.

Carlos A. Vazquez–Alvarez, San Juan, PR, for Defendant Hector Davila–Sostre also known as Pepo.

Octavio M. Rivera–Bujosa Rivera Bujosa Law Office, Mercedita, PR, for Defendant Carlos Colon–Ortega also known as Pajarito.

Judith Vargas, New York, NY, for Defendant German Hernandez–Vega also known as Mansito.

Carlos M. Calderon–Garnier, San Juan, PR, for Defendant German Hernandez–Navedo also known as Manzo.

Ramon L. Garay–Medina, San Juan, PR, for Defendant Jose Negron–Sostre also known as Dimas.

Rosa Ivette Bonini–Laracuente, San Juan, PR, for Defendant Jesus Rosario–Colon also known as Trillizo.

Olga M. Shepard–De–Mari, San Juan, PR, for Defendant Alfredo Sierra–Garcia also known as Freddy.

Juan M. Masini–Soler, Juan Masini Soler Law Office, San Juan, PR, for Defendant Felix Rodriguez–Collazo also known as Jun Jun.

Lydia Lizarribar–Buxo, Lizarribar Masini Law Office, San Juan, PR, for Defendant Jorge J. Miranda–Sang also known as Chino, also known as Luis Miranda–Sang, also known as Chinito.

Rafael Anglada–Lopez, Rafael Anglada Lopez Law Office, San Juan, PR, for Defendant Raymundo Carrelo–Ortiz also known as Reymond Churrita.

Francisco J. Adams–Quesada, Jose F. Blanco–Torres, Law Offices of Jose F. Blanco, San Juan, PR, for Defendant Jose Soler–Rodriguez also known as Chambele.

Anita Hill–Adames, Anita Hill Law Office, San Juan, PR, for Defendant Jose Santiago–Fisher also known as Flaco Fisher, also known as Flaco.

Jose C. Romo–Matienzo, San Juan, PR, for Defendant Geovani Vega–Diaz also known as Puto.

Jose A. Suarez–Santa, Suarez Santa Law Office, Guaynabo, PR, for Defendant Hector Rodriguez–Acevedo also known as Ciales.

Michael Raymond Hasse, New London, CT, for Defendant Felix Rodriguez–Sostre also known as Nuni.

Elfrick Mendez–Morales, Mendez & Mendez, San Juan, PR, for Defendant Luis Martinez–Correa also known as El Viejo.

Juan G. Nieves–Cassas, Nieves–Cassas Law Office, San Juan, PR, for Defendant Aida Mercado–Tapia also known as Aida La Cana.

Raymond Rivera–Esteves, Juan Hernandez Rivera & Assoc., San Juan, PR, for Defendant Gisela Santos–Mercado.

Raymond L. Sanchez–Maceira, Sanchez Maceira Law Office, San Juan, PR, for Defendant David Lopez–Ortiz.

Ernesto Reyes–Blassino, ERB Law Office, Guaynabo, PR, for Defendant Xiomara Rosado–Pabon also known as Crafmatic.

Ernesto Hernandez–Milan, Emesto Hernandez Law Office, San Juan, PR, for Defendant Antonio Garcia–Leon also known as Gringo.

Jorge E. Vega–Pacheco, Jorge E. Vega Pacheco Law Office, Rio Piedras, PR, for Defendant Juan C. Soler–Rodriguez also known as Juanca.

Joseph C. Laws, Victor J. Gonzalez–Bothwell, Federal Public Defender's Office, Hato Rey, PR, for Defendant Jesus Robles–Santana.

Artemio Rivera–Rivera, Artemio Rivera Law Office, Guaynabo, PR, for Defendant Angela Diaz–Rivera.

Maria H. Sandoval, Maria H. Sandoval Law Office, San Juan, PR, for Defendant Jessica Jimenez–Martinez.

Joseph A Boucher–Martinez, San Juan, PR, for Defendant John Paul Moran–Santana also known as El Barber.

Guillermo A. Macari–Grillo, Macari Law Office, San Juan, PR, Defendant Madeline Rosario–Reyes.

Gabriel Hernandez–Rivera, Law Offices of Gabriel Hernandez Rivera, San Juan, PR, for Defendant William D. Garcia–Vargas also known as Brena.

Jose L. Barreto–Rampolla Rivera, Barreto & Torres Manzano Law Office, San Juan, PR, for Defendant Cruz Pabon–Bonilla.

Irma R. Valldejuli–Perez, San Juan, PR, for Defendant Carlos Ramos–Pabon also known as Charlie.

Jose A. Figueroa–Santaella, Figueroa Gonzalez & Martinez, San Juan, PR, for Defendant Guillermo Miranda–Monserrate.

Vladimir Mihailovich–Nikolich, Carolina, PR, for Defendant Victor Garcia–Bonilla also known as Bebo.

Jose R. Olmo–Rodriguez, Olmo & Rodriguez Matias, San Juan, PR, for Defendant Susana Guitar–Landron.

G. Andrew Massucco–LaTaif, Olga B. Castellon–Miranda, United States Attorneys Office, District of Puerto Rico, San Juan, PR, Mario Torres–Marin, Marquest J. Meeks, United States Department of Justice, District of Puerto Rico, Hato Rey, PR, for Plaintiff.

## MEMORANDUM AND ORDER

BESOSA, District Judge.

Before the Court is defendants' motion alleging jury tampering. In the motion, the defendants present allegations, then move the Court to "question[ ] and/or dismiss[ ]" the jurors named in the motion, and to instruct the prosecutors "to abstain in the future from trying to look for sympathy from the jury and/or transmit any type of message to them through their body language." (Docket No. 2308 at 5.) The Court rejects outright defendants' allegations and **DENIES** both the motion to question or dismiss jurors and to instruct prosecutors as defendants request.

### Background: The Jury Tampering Motion

On February 24, 2010, Ramon Maysonet–Soler ("Maysonet") filed a motion styled "Informative Motion and Request for Order." (Docket No. 2308.) The motion alleges that certain non-verbal

communications observed personally by defendant Maysonet and by Maysonet's attorney, Alexander Zeno ("Zeno"), between the prosecutors and the jurors, and the conduct of a government witness—such as body language, gestures, facial expressions, and eye contacts—amounts to jury tampering. (Docket No. 2308.)

In the motion, Maysonet presents the following: (1) defendant Maysonet informed Zeno of his (Maysonet's) personal observations "on several occasions" of "non-verbal communication between the prosecutors and the jurors"; (2) on February 22, 2010, Maysonet informed Zeno of his (Maysonet's) personal observation of another nonverbal communication between the prosecutors and the jurors, prompting Zeno to keep a record of "any interactions between jurors and prosecutors"; (3) a chart[1] created by Zeno recording his own (Zeno's) personal observations and interpretations of non-verbal interactions in the courtroom with corresponding dates and times; (4) Zeno's assertion that those documented interactions probably represent only a fraction of the misconduct occurring; and (5) Zeno's observation, on the same day he filed the jury tampering motion, that a particular juror "started staring at the [government] witness" and "he stared at her back [sic], while both smiled at each other in an approving way" for which that juror should be questioned to

learn whether she knows the witness. (Docket No. 2308.)

In its opposition (Docket No. 2386), the Government denies all accusations of prosecutorial misconduct and contends that no jury tampering has occurred. The government argues that the defendants' allegations of jury tampering are based solely on the defense attorney's and defendant's [Maysonet] own unfounded characterizations of body language and other non-verbal communications, rendering those claims "frivolous allegations without merit." (Docket No. 2386 at 1–2.) The government argues that, even if the alleged conduct did occur, "it was the duty of the attorneys who purportedly made those observations to object in timely fashion and advise the court of the alleged conduct." *Id.* at 2. According to the government, the fact that the remaining defendants did not contemporaneously join Maysonet's original objection to the conduct he alleged and failed to cite any supporting legal authority for the jury tampering allegation betrays the fact that "these new allegations of misconduct are simply unfounded" and "are nothing more than a bad faith attempt at confusing the jury and fabricating an issue for appeal . . ." *Id.* at 2–3.

The remaining four defendants did not join Maysonet's jury tampering motion contemporaneously, but joined Maysonet's jury tampering motion on March 1, 2010, five days after it was filed. (Docket No. 2338.) Maysonet filed a reply[2] to the

---

1. Chart is contained in Maysonet's motion at Docket No. 2308. should be questioned to learn whether she knows the witness. (Docket No. 2308.)

2. The Court's analysis later on in this opinion addresses the majority of arguments raised in Maysonet's reply brief. The remaining arguments are all rejected as baseless and, accordingly, addressed only briefly here: (1) Maysonet's contention that the government's arguments are self-serving is absurd and banal; all arguments in litigation settings are,

presumably, in "service" of the arguing party. Were a party's arguments not self-serving, the question of malpractice or ineffective assistance of counsel properly may arise. (2) In response to the government's assertion that the allegations of jury tampering conduct are unfounded, frivolous, and without merit, Maysonet contends that his list of allegedly improper interactions shows that the interactions occurred over the course of "at least *two days*", hence, "it was not a misunderstanding or a matter of perception . . ."

government's opposition on March 13, 2010 (Docket No. 2420), which the government also opposed (Docket No. 2450), on March 18, 2010.

## Legal Standards and Discussion

■ "When a non-frivolous suggestion is made that a jury may be biased or tainted by some incident, the district court must undertake an adequate inquiry to determine whether the alleged incident occurred and if so, whether it was prejudicial." *United States v. Bristol–Martir*, 570 F.3d 29, 42 (1st Cir.2009) (quoting *United States v. Barone*, 114 F.3d 1284, 1307 (1st Cir.1997) (internal quotations and citations omitted)). The Court need not go further—the motion presented by Maysonet and joined by the remaining defendants is so utterly devoid of merit that it raises concern as to the attorneys' motivations—good faith or not—for raising it. The Court addresses below both the meritless motion itself and its concerns about the behavior of the defense attorneys.

■ This is the *third* time defendants have alleged a problem with the jury. In response to the first two sets of allegations, the Court conducted extensive investigations and detailed its findings and its legal analysis in an exhaustive memorandum and order of nearly fifty pages issued on February 16, 2010. (Docket No. 2263). The Court determined in its memorandum

and order that even if a taint-producing event had occurred at all (which it doubted), no prejudice to defendants resulted, and the jury's impartiality remained strongly intact with the defendants' right to a fair trail well-protected. (*See Id.* at 48.) The Court also detailed numerous prophylactic measures taken further to safeguard the defendants' rights during trial, including the affirmation of each individual jury member during lengthy in camera *voir dire* proceedings that he or she was able to remain impartial and to base deliberations on only the evidence at trial, and a warning from the bench in open court that contacts with any jury member would not be tolerated.[3] *Id.* at 49. Most significantly, the Court's February 16, 2010 memorandum and order analyzed the merits of the jury tampering allegations according to relevant standards and issued detailed warnings to the defense attorneys regarding the lack of substantiation of their legal arguments.

While the Court need not regurgitate its earlier opinion on jury tampering, it does cast this case's recent history as an important backdrop for the Court's findings here, that the defendants' current suggestion of jury tampering is an utterly frivolous one. To begin with, the Court already made clear in the February 16, 2010

---

(Docket No. 2420 at 2.) The Court rejects Maysonet's response; the length of time that the defendant documented his perception has no bearing on whether the allegations of jury tampering are frivolous. (3) The Court also rejects Maysonet's claim that this Court "asserted" anything with regard to the conduct of one of the Assistant United States Attorneys in this case. *Id.* at 3. In fact, the Court reprimanded defense attorney Ramos–Grateroles, for her exaggerated movements of the head, facial gestures, and her suggestion of questions during a witness's cross examination to another defense attorney from counsel table loudly enough to be heard. The Court's comments that AUSA Castellon was "The pot

calling the kettle black" referred to Mr. Castellon's own gestures while examining witnesses.

**3.** The complete list of prophylactic measures taken can be found in the Court's Memorandum and Order of February 16, 2010, at Docket Number 2263. Additionally, the Court details the individual *voir dire* proceedings with each juror regarding his or her ability to remain impartial in the "Factual and Procedural Background" section of the Memorandum and Order. (Docket No. 2263 at 3–27.)

memorandum and opinion on jury tampering that the sort of conduct alleged here (in the current motion) is not the type that impairs a jury's ability to render an impartial verdict. To wit, the Court reasoned as followed:

> Jurors are not stupid. They know that family members and other courtroom visitors may be hoping for a defendant's acquittal. It is natural and predictable and not at all inappropriate that jurors feel looked at or scrutinized by individuals in the courtroom—they *are* being looked at. Jury members are the decision-makers in these cases, and they know that they will receive a lot of attention from those in the courtroom, *including attention from the judge, attorneys, defendants, and members of the public.* A jury is not contaminated by this kind of predictable and harmless attention by third parties; a jury is considered contaminated by third party contact only if the effect of that contact would prevent the jury from deliberating fairly or impartially.

> The Court trusts individuals sitting on this and other juries can distinguish generally between the attitudes of those in the courtroom who may direct toward the jury a glare in frustration, a smile in relief, an impatient sigh, or any number of natural reactions to the events unfolding in the courtroom, from the evidence they are permitted to consider during deliberations.

> Finally, were the Court to find bias whenever a juror felt scrutinized by members of the public attending trial, it would invite members of the public who have an interest in ending the trial to intentionally try to contact members of the jury, whether by accusation of misconduct, eye contact, or otherwise. The Court must distinguish between contact that endangers the integrity of the process and conduct that is either natural in the course of public trial or conduct initiated by members of the public to frustrate the trial proceedings outright. Defendants have the right to a jury that can conduct deliberations based only on the evidence and can render an impartial verdict; they do not have the right to a jury so lily-pure that jurors would have to be blind or stupid to be considered untainted.

Docket No. 2263 at 46–48. [Emphasis added]

The defendants fail to cite or even to acknowledge this Court's recent discussion of the range of events considered to be "taint-producing." Their failure to reference that analysis in order to distinguish the conduct alleged here from the conduct this Court already deemed natural and permissible in the context of a public proceeding is akin to wilful blindness. *See U.S. v. Zannino,* 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived")(citing, e.g., *Brown v. Trustees of Boston Univ.,* 891 F.2d 337, 353 (1st Cir. 1989)).

Next, the defendants flatly misread or ignore the analysis of binding case law contained in the February 16, 2010 memorandum and order. In his reply memorandum, Maysonet asks the Court to apply a presumption of prejudice called the "*Remmer* presumption," coined from the United States Supreme Court's holding in *Remmer v. United States,* 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954). This Court carefully explained in its recent memorandum and order that, according to the First Circuit Court of Appeals, the *Remmer* presumption is not applied in cases where there is not "an egregious tampering or third party communication which directly injects itself into the jury process." *U.S.*

*v. Boylan,* 898 F.2d 230, 261 (1st Cir.1990). The Court took pains to distinguish, citing case law from the First Circuit and elsewhere, between facts triggering the presumption of prejudice and facts that do not. (Docket No. 2263 at 32–36.) The Court then flatly rejected the application of the *Remmer* presumption to the first allegations of jury tampering, which, notably, the defendants did not contest. Given that the latest allegations of jury tampering fall short of those contemplated by the Court in its previous analysis, Maysonet's contention that the *Remmer* presumption applies here, and thus that the defendants in this case need not show prejudice,[4] is not merely odd, it is evidence of a wilful misreading of the law and of this Court's prior application of that law in this very case.

Finally, and most significantly, the Court is irate that the defendants have either failed to read or ignore this Court's instructions (and disregard local rules) that require proper citation to legal authority in support of motion pleadings E.g., Loc. Rule 7(a). The defendants have asked this Court to treat seriously, for a third time, the issue of jury tampering without bothering to substantiate their arguments with proper legal analysis. Maysonet's motion contains no support from any legal authority whatsoever to support his position that his or his attorney's personal observations of the government attorneys' facial expressions, eye contacts or gestures amounts to jury tampering or undermines his right to a fair and impartial jury.

While the Court took defendants' first two allegations of jury tampering seriously, treating them as non-frivolous suggestions of jury taint[5] and thus stopping the trial to conduct thorough investigations, the defendants' motions in support of those first allegations contained almost no legal analysis: the six-page motion for mistrial contained a legal analysis section of less than a full page of text and the motion for new trial's argument section was also less than one page. Docket No. 2263 at 27–31 (citing Docket Nos. 2193 and 2192, respectively). The Court explicitly expressed its frustration in its memorandum and order that the defendants' failed to cite to any relevant legal authority in support of their extremely serious requests for mistrial or new trial. (Docket No. 2263 at 27–31.)

The Court's explicit warnings about citation in its recent opinion have been outright ignored. Here, the only suggestion of jury tampering is based on the interested parties' perceptions of body language and nonverbal communications. No case law is cited to support the defendants' contention that such perceptions may constitute a basis for the remedy they seek:

---

**4.** Maysonet's reply brief states that "[i]n light of the clear precedent from the Supreme Court in Remmer ... it is frivolous for the Government to claim that, under these circumstances the Defendant has to show prejudice." (Docket No. 2420 at 6.)

**5.** Although it went on to assume taint and analyze its potential affect on the jury, the Court doubted that the events provoking the second allegation constituted a "taint-producing" event at all, stating:

In other words, on a sliding scale of taint, the events here barely register: there is no allegation of a direct third party contact, no exposure to extrinsic information or evidence, no improper materials in the jury room, no direct coercion or bribery, no jury tampering—no activity that, on its face, constitutes interference with the jury's ability to fairly weigh the facts of the case. The only interference possibly at play in this case is that which the defendants must strain to infer. The Court thus finds that, although the three events alleged to be taint-producing did indeed occur, they did not actually produce taint.

Docket No. 2263 at 35.

dismissal of jurors. It is therefore unclear how the observations made by Maysonet, Zeno, or the joining defendants' attorneys, connect to an allegation of jury tampering. Neither Maysonet's original motion nor the joinder papers supporting it discuss how the courtroom interactions observed in this case have disabled the jury members' ability to render an impartial verdict. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *U.S. v. Zannino*, 895 F.2d at 17.

■ Instead of responding to this Court's numerous warnings (to the defendants in particular) regarding the attorneys' obligation to support legal arguments with relevant legal authority, Zeno attempts to shirk his own responsibilities as an officer of this Court and point fingers at the government, contending in his reply brief that it is the government's failure to provide supporting legal authority for its opposition to the defendants' motion that must compel the Court to dismiss jurors for jury tampering. Pointing to the amount of citation in the government's brief does nothing to bolster Maysonet's paltry analysis. More importantly, Maysonet and his fellow defendants bear the burden here, not the government. The standard for accessing jury tampering that Maysonet himself cites makes clear that it is the moving party who bears the burden of showing a non-frivolous suggestion of jury taint. Only when a *non-frivolous* suggestion or *colorable* claim of jury tampering arises must the Court investigate it, and only when the *Remmer* presumption applies does the burden shift to the government to show no prejudice exists. *See, e.g., U.S. v. Ofray–Campos*, 534 F.3d 1, 20–21 (1st Cir.2008) (describing the burden-shifting of a *colorable* claim of jury tam-

pering); *see also* Fed.R.Civ.P. 7(b) (stating, *inter alia*, that a motion for a court order must "state with particularity the grounds for seeking the order").

Nothing shows disrespect for the Court more profoundly than complete disregard for its rulings and opinions. When the Court documents carefully the weaknesses in parties' motions (on the exact same issue), it expects parties will read and learn from the Court's words. The defendants have now submitted a motion for review that regards exactly the same issue already addressed by the Court, yet failed to acknowledge any of the opinions or cure any of the weaknesses admonished in the court's previous order.

Alone, the defendants' neglect in responding to the legal arguments and warnings of the Court indicate the frivolity of the new jury tampering allegation: if the Court found no taint-producing event before, why would it now? If the Court found no prejudice before, why would it now? If the Court enacted various prophylactic measures already, including instructing both the public and the members of the jury of their duties during trial, why would those measures not be sufficient now? Defendants' abject failure to address any of these critical issues in the face of a lengthy analysis by the Court simply belies their lack of seriousness in bringing forth this motion. It is not just the defendants' failure to present their motion in light of this Court's earlier rulings on jury tampering, however, that reveals the frivolous nature of the new allegations.

First, this Court has been attentive to both counsel and jury conduct, especially in the wake of the first allegations of jury tampering, and has observed none of the interactions defendants allege occurred.

Second, the Court's independent investigation into jury tampering turned up no

cases containing facts similar to these; it has showed, conversely, that the facts alleged do not rise to the level needed to establish the kind of tampering found to cause prejudice or impede a fair trial. (See Docket No. 2263 at 31–38.) Even if the Court missed certain eye movements or gestures or other nonverbal sorts of interactions, which it perhaps did, as it cannot see everything, it rejects the notion that these interactions merit the sort of investigation this Court earlier conducted. The current jury tampering allegations, in contrast to those earlier raised and in contrast to those that might establish a colorable claim of jury taint, involve only the very ordinary interactions of a heated trial. *See Maday v. Public Libraries of Saginaw,* 480 F.3d 815, 818 (6th Cir.2007) (denying mistrial based on defense attorney's allegedly inappropriate verbal remarks and facial gestures was not an abuse of discretion).

Third, the remaining defendants notably did not join Maysonet's motion for jury tampering at the get-go. The Court therefore instructed the remaining defendants to inform the Court as to their position on the issue raised by Maysonet by March 1, 2010, and to substantiate that position with support and citation to legal authority. At the eleventh hour, on March 1, 2010, the defendants finally decided they, too, "observed the prosecutors' demeanor before the jury but had not called previously the attention of the Court, since we have tried to concentrate our efforts in more demanding issues." (Docket No. 2338 at 2.) Nevertheless, "notwithstanding that and upon the frequency of the incidents described by defendant Maysonet–Soler, the undersigned have to inform the Court as to what they have perceived." The fact that the joining defendants did not join Maysonet's motion immediately, and the fact that they did not raise objections to conduct they now claim to be prejudicial at the time

they observed it, weighs heavily against a showing of colorable claims, especially, when defendants themselves indicate that they were focusing on "more demanding issues".

The last minute, upon-second-thought joinder here also creates a number of other impressions affecting the Court's decision not to conduct further hearings or inquiries. Defendants are all represented by experienced criminal defense attorneys; all of these attorneys should know to object immediately upon observation any prejudicial or taint-producing conduct. The fact that four of the five defense attorneys did not immediately rise to object to the conduct alleged improper is, frankly, suspect, and consequently creates the impression that the conduct did not merit objection. Worse, it creates the inference that the attorneys decided to join the motion for other motivations than simply to protect the rights of their clients—rather, the inference can be drawn that the attorneys only objected to protect themselves on the record against allegations of ineffective counsel or to create issues where there are none to create a ground for appeal.

Third, the joining defendants' basis for their joinder also fails to cite to any relevant legal authority addressing the issues in this case or regarding this motion. The dearth of authority, again, flies in the face of the Court's recent memorandum and order warning parties to support their legal arguments better, and despite the Court's explicit order during trial that the defendants cite to relevant legal authority in support of a joinder motion. Instead, the joining defendants relied almost exclusively on their personal observances and anecdotes of courtroom interactions, failing to cite to any legal authority save a single case and the standing order of this Court supporting the general proposition that a

defendant is entitled to a fair trial and impartial jury.[6] No other authority is cited. The joinder motion states only the general truism that the Sixth Amendment provides an individual accused of a crime with the right to an impartial jury, then goes on to explain, again citing no case law, that "a raised eyebrow, a tilt of the head, a sarcastic tone—all say something to the jury, and the theatrical prosecutor's conduct can transcend the boundaries of mere animation and become an improper expression of the prosecutor's personal beliefs to the jury." Finally, defendants list additional anecdotal personal observations and interpretations of courtroom interactions during the trial to show that "the demeanor of the prosecutors is conveying to the jurors impermissible inferences which are depriving defendants of a fair trial." (Docket No. 2338 at 2.) The demeanor, which defendants state apparently deprives the defendants of a fair trial includes: prosecutors laughing and gesturing to jurors during the a cross-examination of a government witness "to project disbelief"; and prosecutors making comments loud enough to be overheard by defense counsel "to the effect that defense was wasting time on their cross." (Docket No. 2338 at 2–3.) The defendants' joinder motion also asks the Court to take note of the "proximity of the prosecutor's table and the evidence cart to the jury box." *Id.* at 3.

Defendants do not clarify, however, how the prosecutors' demeanor or proximity to the jury (which is the same in every case held in the courtroom) deprive their clients of a fair trial.

## CONCLUSIONS

The record of this trial shows no evidence that the jurors have been disabled by the rigorous, often heated advocacy in the courtroom. Nothing alleged suggests an improper conveyance of information to the jury. Defendants make no showing of jury tampering that has resulted in the denial of due process. Additionally, the parties are reminded that the jurors have been properly admonished about their deliberative duties and, when directly and individually questioned, all affirmed that they could perform those duties impartially.

While certainly the Court does not condone emotional outbursts in the presence of the jury, the fact is that trial practice involves some level of showmanship, and the Court must patrol carefully that boundary between transforming trial attorneys into legal robots and allowing them to put on histrionic, Oscar-worthy performances in the courtroom. While drawing the line between effective trial advocacy and inappropriate courtroom strategies is no small feat, "the line must be drawn." *U.S. v. Kouri–Perez,* 187 F.3d 1, 12 (1st Cir.1999) (internal citations omitted).

██ Here, the line is drawn where defendants abuse the Court's resources by filing frivolous motions. As officers of the court, attorneys are bound, whether appointed or not, "not to clog the courts with frivolous motions or appeals," *Polk County v. Dodson,* 454 U.S. 312, 323, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981). "In this age of

---

**6.** The only legal authority defendants cite in their joinder motion is a United States Supreme Court case stating the obvious premise that the trial judge is responsible for ensuring a fair trial. (Docket No. 2338 at 4)(citing *Neb. Press Ass'n v. Stuart,* 427 U.S. 539, 555, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976)). The

defendants also direct the Court's attention to this Court's standing order adopting The American College of Trial Lawyer's Code of Pretrial and Trial Conduct, and "Standard No. 19" of the Code of Trial Conduct, which emphasizes the correct protocol for attorney interactions with jurors during trial.

burgeoning litigation expense and overcrowded dockets, ... a busy trial judge should [not] have to tolerate litigants' repeated efforts to stall a case [or] harass other participants." *Id.* (citing *Jones v. Winnepesaukee Realty,* 990 F.2d 1, 5 (1st Cir.1993)). For the reasons stated above, the motion now before the Court is so wanting in merit and so wholly frivolous that the Court's time is ill-spent—indeed clogged—on its discussion. Raising frivolous motions, whether to provoke an unneeded mistrial or to pave so aggressively the road for a future appeal that the present defense itself is undermined, will not be tolerated by this Court. "[A]n attorney is not free to say literally anything and everything imaginable in a courtroom under the pretext of protecting his client's rights to a fair trail and fair representation." *United States v. Cooper,* 872 F.2d 1, 3 (1st Cir.1989) (internal citations omitted). Nor does zealous representation permit attorneys to "conjure up imagined wrongs and sling them with nothing but vindictive purpose." *Id.*

While this Court does not, yet, go so far as to find the defendants' allegations to be motivated by a "vindictive purpose," let the parties be now aware that any further frivolous motions on the issue of jury tampering or anything else may result in sanctions. A district court has the power to punish by fine or imprisonment, at its discretion, "such contempt of its authority ... as [m]isbehavior of any person in its presence or so near thereto as to obstruct the administration of justice" or "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(1).

Accordingly, the defendants' motion alleging jury tampering, requesting dismissal of jurors, and instructions to prosecutors (Docket No. 2308) is hereby **DENIED,** the joinder motion (Docket No. 2338) is **MOOT,** and defense counsel is hereby **WARNED.**

**IT IS SO ORDERED.**