Filed 4/27/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| EUDORO MAGANA,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN MATEO COUNTY,<br><br>        Respondent;<br><br>THE PEOPLE,<br><br>        Real Party in Interest. | A153981<br><br>(San Mateo County<br>Super. Ct. No. 16-SF-005960) |

Defendant Eudoro Magana is charged with two counts of rape. After his trial date was continued four times, defendant's trial counsel, Daniel Everett, sought a fifth continuance, but failed to appear for the hearing on the motion, and the case was assigned out to trial. Everett then exercised a peremptory challenge (Code Civ. Proc., § 170.6)[1] against the trial judge to whom the case was first assigned, resulting in its assignment to a second judge. Everett then sought to exercise a second peremptory challenge and, when that proved unsuccessful, filed a "motion for recussal [*sic*] of judge" (§ 170.1) asserting that the trial judge was biased against Everett because he had declined to meet in chambers with counsel to discuss settlement. However, Everett voluntarily withdrew that motion before the judge could address it.

On the second day of trial, Everett filed a motion to appoint an expert to testify that his client's confession was involuntary. The trial judge ruled that Everett was not prepared to proceed to trial and was not providing Magana with adequate representation

_____

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

1

and continued the trial. The prosecution then requested the court to remove Everett as counsel, asserting that the court had a duty to preserve the integrity of the judicial process and to preserve all parties' right to a speedy trial. Following a hearing, the trial court granted that motion, finding that due to Everett's conduct, the alleged victim, the prosecution, and the defendant had been denied their right to a speedy trial, and that it had no faith that Everett would be prepared to take the case to trial on a timely basis.

Defendant now brings a petition for writ of mandate or prohibition, challenging both the trial judge's refusal to disqualify himself and his removal of defense counsel. We shall deny the petition. Defendant withdrew his first statement of disqualification, and the trial court correctly found his second statement of disqualification was untimely. Further, a trial court has authority to remove defense counsel to ensure that adequate representation is provided, and to prevent substantial impairment of court proceedings. While such authority is to be sparingly exercised and reserved for only the most exceptional cases, the trial court did not abuse its discretion in finding that this is just such a case and removing counsel.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was arraigned in May 2016 on a complaint charging him with two counts of rape (Pen. Code, § 261, subd. (a)(2).) In June 2016, attorney Daniel Everett substituted in as defendant's attorney of record.

The case was initially set for trial on March 27, 2017. Everett moved to continue the trial, which was then rescheduled for May 22, 2017.

Court was scheduled to begin at 8:45 a.m. on May 22. Everett did not arrive until 11:50 a.m., and then made an oral motion to continue the trial based on a need to conduct further investigation into a purported allegation of sexual assault that the victim previously made against a third party. The court granted the continuance over the prosecution's objection. Trial was re-set to July 10, 2017. On July 5, the prosecution moved to continue the trial based on witness unavailability. Defendant did not object. The court moved the trial date to November 6, 2017.

2

On November 6, 2017, Everett indicated he was not prepared to proceed to trial and asked for another continuance, his third such request. The prosecution objected. The court, after advising the parties that no courtrooms were available, granted the continuance and moved the trial date to February 20, 2018.

On February 20, 2018, the parties were scheduled to appear for trial at 8:45 a.m. Everett was not present. Another attorney indicated that Everett was detained elsewhere and would be moving for a continuance. The matter was transferred to the afternoon master calendar before the Honorable Jonathan E. Karesh.

Everett appeared late for the afternoon calendar. The court first took up the defendant's motion for a further continuance of the trial. Everett admitted that the motion was "skimpy." He explained to the court that his motion was based on a conversation he had recently with a potential witness named Benito Zapata, against whom he claimed the alleged victim in the case had filed a false claim in 1999. According to Everett, Zapata would "be able to take the stand and say that she [the victim] has a reputation within the community of saying these sorts of things and making up these sorts of things that, in and of itself, the whole case could hinge upon. [¶] . . . And, that alone, that is a very important aspect of this case." Everett admitted that Zapata had not been subpoenaed, but asserted that the defense had just learned of him "[w]ithin the last 72 hours." Everett sought a continuance of one week.

To support his request for a continuance, Everett forwarded an email to Judge Karesh that showed an email conversation Everett had with his defense investigator regarding Zapata. It was dated November 7, 2017, making it over three months old. In the email, the investigator explained to Everett that he and another investigator had interviewed Zapata, the victim's former work supervisor, by telephone on June 2, 2017. The investigator stated in the email that Zapata "knew nothing about [the victim] accusing anyone of sexual misconduct." The investigator continued: "Mr. Zapata also made it clear . . . that he wanted 'nothing to do with' our investigation or 'going to court.' [¶] Seemed like a non-witness at the time and unless he has new information or a reason

3

he withheld info in the first interview is not someone who should be subpoenaed to a trial."

After reviewing the email, Judge Karesh noted that it was "completely different" than what Everett had represented; the email showed that Everett had been aware of Zapata for months, and that Zapata would not provide testimony favorable to the defense. Everett responded that there were additional emails that Judge Karesh had not read. Judge Karesh asked Everett to send the emails to the court and permitted Everett to leave the courtroom to send the emails.

Everett then left the courtroom. Without warning or explanation, Everett did not return, leaving his client, the prosecutor, and the judge waiting for nearly an hour for him to return. As a result, Judge Karesh was unable to rule on the continuance motion or to assign the case out for trial. Judge Karesh instructed the defendant to return to court the following morning, and asked the courtroom clerk to instruct Everett to return the following morning as well.

The following morning, February 21, Everett did not show up to court at the start of proceedings. Judge Karesh told defendant that "we're sort of put in a difficult position. I don't know where your lawyer is." Defendant stated that Everett had called him the night before and said he would be in court. Everett eventually appeared in court later that morning. Judge Karesh asked Everett to explain his absence from the previous day. Everett said he left the courtroom the previous afternoon because he gets better reception on his cell phone from outside the courtroom, which makes it easier to send emails. Everett also told the court that his understanding was that another attorney, John Lee, had appeared for him earlier in the day, and that Lee had informed the court that Everett would need to leave early. Judge Karesh said he was not so informed. In fact, the courtroom bailiff stated that he had gone to another courtroom to talk to Lee, who told the bailiff that he would not be standing in for Everett because of the serious charges that defendant was facing. Everett did not notify the court clerk of his appointment either.

Judge Karesh then asked Everett if he had the additional emails he referenced from the previous day. Everett said he did, and, as he did the day before, asked Judge

4

Karesh for permission to step outside of the courtroom to send them. Judge Karesh declined, saying, "Mr. Everett, you did that yesterday and disappeared without telling the Court. Why would I let you do that again?" After confirming that the prosecution was ready to proceed to trial, Judge Karesh then assigned the case for trial to Judge Steven Dylina. Everett immediately exercised a peremptory challenge (§ 170.6) against Judge Dylina. Judge Karesh accepted the challenge, and assigned the case for trial to a second judge, the Honorable John L. Grandsaert.

The parties appeared before Judge Grandsaert later the same morning. Everett indicated that he was not ready to proceed to trial. Everett once again sought to continue the trial and referenced the same emails he had tried to send to Judge Karesh that purportedly showed he had only recently located a witness who would testify that the victim had previously made false allegations against third parties. The prosecutor objected to the continuance request and informed Judge Grandsaert about the proceedings before Judge Karesh. Nevertheless, Judge Grandsaert said he would review the emails to determine whether there was good cause for a continuance since Judge Karesh did not appear to have issued a formal ruling on the issue. Judge Grandsaert granted Everett's request to allow him a brief recess to print the emails.

The emails are not in the record before us, but were described by Judge Grandsaert during the hearing. The first email was dated February 15, 2018 from Everett to his investigator. Everett stated he spoke to a person named Benito, who had information that Everett believed would impeach the victim in this case. The second email is a response from the investigator stating he will "get on it right away." The final email was sent by the investigator to Everett on February 20 and provided Everett with a case number from a 1999 case against Zapata. Judge Grandsaert asked Everett if he had any other information that would support his request for a continuance. Everett offered none, but claimed that "everything in these emails down to the font completely corroborates exactly what I had said both before this court, in front of counsel, and in front of Judge Karesh." He contended that "the conversation with Benito [Zapata] was extraordinary in scope in that it directly went to the credibility of the alleged victim. It is the time bomb that us on

5

the defense have been waiting for." He asserted that "in my view, as Mr. Magana's defense counsel, it is absolutely 110 percent necessary that we get this individual into court, whether he is compelled to come to court or comes voluntarily."

Everett asserted that his investigator had attempted to subpoena Zapata. The court observed that nothing in the record before it addressed how long the investigator would need to subpoena him or explained why he had not been subpoenaed earlier. The court suggested that Everett have the investigator appear to explain what he had done to subpoena the witness, and observed that Everett had not indicated how much time he was requesting for a continuance.

Everett then claimed he had an additional email that contained "sensitive information" that he wanted to redact before showing to the court. The email was another one from the defense investigator, who stated that Zapata was uncooperative in being served with a subpoena or voluntarily coming to court. Everett again asserted that there had been an attempt to subpoena Zapata, but said, "We've only had five days to do so." In response to later questions from the court, however, Everett was unable to tell the court how many attempts had been made to serve Zapata and at what times of day.

Judge Grandsaert expressed the tentative view that the defense had not exercised reasonable diligence or shown good cause for a continuance. However, Judge Grandsaert said he would allow the investigator to appear in court to provide additional evidence supporting the continuance request.

Everett then moved for the appointment of an expert witness "in the area of false confessions due to language barriers." Everett explained that after speaking to the investigator, it "became quite obvious" that "false confessions" would be "a major issue in the trial" because police had elicited a confession from defendant during an interview that was conducted in English, defendant's second language. He asserted that the need for such an expert had "just bec[o]me obvious," although he had been counsel since May 2016. Everett had not filed the motion or a motion to suppress defendant's confession, and as a result, the court did not have copies of them.

6

Judge Grandsaert gave Everett until 1:30 p.m. to present any additional evidence that would constitute good cause for a continuance, and encouraged him to present the investigator as a witness. Everett assured Judge Grandsaert that "absolutely no effort will be spared in obtaining [the investigator's] presence here at 1:30."

When the parties returned at 1:30, rather than present testimony or other evidence on the motion to continue, Everett immediately sought to exercise a peremptory challenge against Judge Grandsaert. Judge Grandsaert denied the request because Everett had already exercised a peremptory challenge. Everett then filed a "motion for recussal [*sic*] of judge" for cause pursuant to section 170.1, asserting that Judge Grandsaert "has a bias against me" because he had declined to discuss possible settlement of the case in chambers with counsel. Everett stated in his declaration that he is a black male "with a practice dedicated to the criminal defense of predominately black and brown males," and that he found Judge Grandsaert's unwillingness to meet in chambers with counsel to discuss possible settlement "very odd, but somewhat in keeping with what I [f]eel is ostensibly disparate treatment by Judges in San Mateo County." After a brief recess, however, Everett withdrew the motion ("Your Honor, at this time, the defense will withdraw the motion"), and the trial judge conducted an in-chambers settlement conference with the parties' consent.

Following the settlement conference, which was unsuccessful, Everett again raised the continuance request. He indicated that it "would not be necessary" to produce his investigator, but provided an additional email from him that the court summarized as stating that "he has not attempted to serve Mr. Benito Zapata with a trial subpoena because . . . Mr. Zapata has expressed that he would refuse to cooperate and did not wish to testify regarding any information he may have." Everett acknowledged that Zapata was not cooperative, but claimed that he had provided "substantially material information that has the potential of exonerating Mr. Magana in these proceedings." He conceded the fact that Zapata is uncooperative was "in no way, shape, or form is a good reason to not compel someone to come to court," but again asserted that the defense had had only "a very short window" within which to subpoena him. Accordingly, he requested "a very

7

brief continuance." The court observed that although the witness had refused to be interviewed by the defense investigator, and did not "sound like a promising witness," the defense still would have at least several days before needing to present any witnesses. The court did not find good cause to continue the trial, particularly "in light of the fact that there's been no attempt to subpoena whatsoever," and denied the motion.

Everett then returned to his request to retain an expert on false or coerced confessions. In colloquy with the court regarding the defense theory, Everett took the position that expert testimony regarding defendant's statement "would be the crux of the defense." In response to the court's question as to why he had not filed such a motion before trial commenced, given that the language issues should have been apparent to him when he undertook defendant's representation in May 2016, Everett's explanation was that he had primarily communicated with defendant in "broken Spanish" with the help of defendant's wife and, therefore, was unaware of defendant's lack of proficiency in English. Judge Grandsaert granted Everett leave to file a written motion seeking an expert. The parties were ordered to return to court the next day, February 22, at 9:00 a.m.

On February 22, Everett again appeared in court late, asserting that the delay was due to a medical issue about which he had apparently informed the judge by email. The court criticized Everett for engaging in ex parte communications with the court without copying the prosecutor, an "oversight" that Everett acknowledged. With respect to the defense's motion for appointment of an expert on the subject of false confessions, the court observed that the authorities cited in that motion did not address confessions at all, but instead related to eyewitness identification. Everett acknowledged that his motion was "boilerplate," but still claimed it was consistent with seeking appointment of an expert in false confessions.

After a brief recess, Judge Grandsaert decided to grant a continuance because he believed that Everett was not prepared for trial and that his representation was depriving the defendant of a fair trial. Judge Grandsaert explained:

> "I do not believe that the defendant is receiving a fair trial. I do not believe that his attorney is properly prepared. I do not believe that the proper authorities are

8

being cited to the court.  I do not believe that in an issue that is important with regard to expert testimony being requested on the eve—no, on the day of trial, that that is adequate representation."

Judge Grandsaert continued the trial by more than 60 days, to April 30.

In the interim, the prosecution filed a motion requesting the trial court to remove Everett as defense counsel, which the trial court set for hearing on March 16.  The prosecution argued that Everett's conduct in this case threatened the integrity of the judicial process and cast serious doubt on whether defendant was receiving constitutionally effective representation.  Judge Grandsaert gave Everett until March 7 to file a response to the motion.  He did not do so.

Everett again arrived late for the March 16 hearing.  Once he appeared, Everett again attempted to exercise a peremptory challenge against Judge Grandsaert, but conceded that he was precluded from filing a second challenge because he had already used one against a different judge.  Everett then argued that although he had withdrawn his prior challenge for cause to Judge Grandsaert, the trial judge nonetheless lacked jurisdiction to conduct any further proceedings in the case.  Everett then sought to file a second such challenge, asserting that he had been unfairly treated by Judge Grandsaert during the prior month's hearings.  Judge Grandsaert denied the challenge as untimely.

Everett claimed that he had not read the prosecution's supplemental brief in support of the motion to remove him as counsel because it was sent to him via email without his consent—despite his own extensive use of email to attempt to file and serve pleadings.  Everett defended his repeated requests for continuances, at one point claiming "you would have to be an absolute idiot if you did not want to have your cases continued" because empirical data shows that defendants fare better when cases are pending for a longer time.  He again asserted that the "real crux" of the trial would turn on the expert testimony regarding defendant's ability to understand, comprehend, and reply during his interrogation by the police; "If we have the expert, we will win the case."  After lengthy argument, he concluded by proclaiming:  "The defense is ready.  We have our expert.  We have our witnesses.  We have swagger as far as the eye can see.  The

9

time for motions are over.  We are ready to try the case.  If it be in front of your honor, you should take notes."

Judge Grandsaert granted the motion and removed Everett as counsel.  We quote Judge Grandsaert's ruling in its entirety:

"It is this court's responsibility to ensure that every defendant receives a fair trial.  That in turn requires that a defendant be represented by a competent attorney acting as a diligent, conscientious advocate.

"The court must also weigh the defendant's right to retain his own counsel with the court's duties to ensure, number one, that his attorney is effectively representing him; number two, that his attorney is able to comply with the court's schedule and rules; and number three, that the public interest in the effective and efficient administration of justice is honored.

"In this case, based upon the conduct of Mr. Everett, I'm going to do something I have never done before.  I am going to grant the plaintiff's motion to remove Daniel Everett from this case.

"On February 20th, [defendant's] case was set for trial.  There have been four prior continuances of his case.  His case had been filed two years earlier.

"Mr. Everett was in court for that fifth setting.  Mr. Everett was late for every court appearance before this court, morning and afternoon, every single time.  I thought that that was something that I could remedy with Mr. Everett, and I was not going to allow that to be the basis for taking any other action that would have affected [defendant's] case and Mr. Everett's representation of him.

"What I could not set aside, however, was the lack of due diligence and the lack of competence of his attorney.  The most incriminating evidence against [defendant] was the testimony of the alleged victim in the case and, number two, [defendant's] confession.

"Mr. Everett and his investigator learned of a potential impeaching witness back in November of last year.  That witness had provided some information that might have led a diligent attorney to follow up with his client or his own investigation to determine what that witness might be able to testify to.

"In this case, instead, what we were met with on the second day of trial was Mr. Everett advising the court that he needed a further continuance to talk to this witness because he himself, not with an investigator present, had gleaned additional impeaching information from this previously known witness, and that

10

they had the witness's address in San Jose, and that attempts had been made to serve a subpoena on this witness without success.

"However, in his investigator's email, what was shared was that no attempt had been made to serve that witness as of 2/21, the second day of trial.

"The other most incriminating evidence is the defendant's confession. It was clear from a cursory review of that confession that the defendant's first language was Spanish and that there were language issues that could be raised surrounding the interrogation.

"Yet, despite the passage of two years, Mr. Everett on the fifth date set for trial made his first request for an expert on the issue of culture, and language, and false confessions. Mr. Everett told the court that this was, as he maintains again today, the most important issue in the case. Yet, his brief filed on the date set for trial, the fifth setting, asking for an expert was completely unbased on any kind of citations applicable to the issue of false confessions. Instead, it was based on false identification cases. It couldn't be more clear to the court as the trial judge that I could not make a ruling on this motion in light of the fact that Mr. Everett's advocacy on this issue was completely inadequate, and incompetent, and showed no diligence whatsoever.

"I was forced to continue the case once again. The alleged victim, the people, and the defendant even were denied their right to a speedy trial.

"I have no confidence that anything is going to be different. Defense counsel has told me today that it is the duty of every defense attorney to seek further continuances. He advises me that he's ready. I don't believe that that is the case. I had signed no paperwork with reference to an expert. If an expert was independently obtained, it certainly was not listed on the witness list. I have no faith that this matter will proceed to trial on a timely basis based on the activities of Mr. Everett in this case.

"Mr. Everett, you are removed from this case."

Everett, on behalf of defendant, then filed the instant writ petition. He makes two challenges. First, he claims that Judge Grandsaert should have disqualified himself after Everett filed his second challenge for cause. Second, he argues that Judge Grandsaert should not have removed him as counsel. We requested a preliminary opposition from the Attorney General. After reviewing the Attorney General's opposition, we solicited a

reply from Everett. We also informed the parties that due to the unusual urgency of this matter, the court may issue a peremptory writ in the first instance, or the court may deny the petition without oral argument by a written opinion on the merits that determines a cause and constitutes law of the case. (See *Frisk v. Superior Court* (2011) 200 Cal.App.4th 402, 407-408, 413–417 [following similar procedure in denying petition for writ of mandate seeking review of denial of peremptory challenge to judge].)

## DISCUSSION

### I. THE TRIAL COURT DID NOT ERR IN STRIKING DEFENDANT'S SECOND CHALLENGE FOR CAUSE AS UNTIMELY.

Defendant challenges the trial judge's refusal to disqualify himself after Everett presented a second statement of disqualification on March 16, 2018.[2] He asserts: (1) that the court clerk erred in marking the statement "received" rather than "filed" and (2) that the trial judge's rulings were void because he refused to disqualify himself or send the statement of disqualification to another judge for review.[3]

---

[2] Defendant contended below that the trial court lacked jurisdiction by virtue of Everett having filed the *first* statement of disqualification on February 21, 2018, even though Everett withdrew that challenge before the trial judge could address it. He did not repeat that argument before this court in his petition, and has therefore forfeited it, despite his belated attempt to resurrect it in his reply brief. "We will not ordinarily consider issues raised for the first time in a reply brief." (*American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 275.) In any event, it lacks merit. Whether or not defendant's "withdrawal" of his first challenge for cause was effective, defendant waived any challenge to the trial judge's actions by permitting the proceedings to go forward without objection. (See *Frisk v. Superior Court*, *supra*, 200 Cal.App.4th p. 409 ["Peremptory challenges do not implicate the court's fundamental jurisdiction and may be waived by litigants who permit the proceedings to go forward without objection"]; *Stebbins v. White* (1987) 190 Cal.App.3d 769, 780-781 [same]; see *In re Christian J.* (1984) 155 Cal.App.3d 276, 280 ["it is clear that the right to urge the disqualification of a judge for most causes under section 170 and peremptorily under section 170.6 may be waived by the parties"].)

[3] After filing the writ petition, defendant filed a "supplement" to the petition. It seeks judicial notice that on October 18, 2016, Everett had filed a statement of

12

Defendant's first contention warrants little discussion. The record reflects that when Everett presented the second statement of disqualification, the trial judge directed it to be marked as received and then reviewed it. Thus, it was "personally served on the judge alleged to be disqualified, or on his or her clerk," which is all that the statute requires. (§ 170.3, subd. (c)(1).) Further, the trial judge promptly ruled on the statement immediately after Everett presented it. Thus, it is undisputed that the trial court did not refuse to consider the statement. Whether the stamp the court clerk placed on the document read "received" or "filed" is inconsequential.

Defendant's second argument fails to address the basis for the trial court's ruling: that the challenge was untimely. Once a statement of disqualification is filed, the judge generally has three options. He or she may: (1) request any other judge agreed upon by the parties to sit and act in his place (§ 170.3, subd. (c)(2)); (2) within 10 days of the objection, "file a consent to disqualification" (§ 170.3, subd. (c)(3)); or (3) file "a written verified answer admitting or denying any or all of the allegations . . . ." (*Ibid.*) Failure to take any action is deemed a consent to disqualification. (§ 170.3, subd. (c)(4).) However, there is a fourth option, the one taken by the trial judge here, which defendant ignores: "if a statement of disqualification is untimely filed or if on its face it discloses no

disqualification against a third judge, the Honorable Stephanie Garratt, who had issued a bench warrant against defendant and an OSC re contempt against Everett for failing to appear at an earlier scheduled court appearance. The supplement alleges that Judge Garratt did not respond to the statement. It further contends that on February 20, 2018, Judge Garratt "ruled that the case was confirmed for trial," and that all subsequent orders made by *any* judge in the case were void. Defendant made no such contention below, and has therefore forfeited it here. In any event, it lacks merit, and is unsupported by the single case he cites. The incomplete court minutes attached to the supplement reflect that the case was originally assigned to Judge Garratt for trial and then reassigned to Judge Karesh. Judge Garratt did not hear or rule on defendant's motion to continue or decide any other matter in connection with the case.

13

legal grounds for disqualification, the trial judge against whom it was filed may order it stricken." (§ 170.4, subd. (b).)[4]

Section 170.3 provides that a written verified statement of disqualification shall set forth the facts constituting the grounds for disqualification of the judge, and "shall be presented *at the earliest practicable opportunity* after discovery of the facts constituting the ground for disqualification." (§ 170.3, subd. (c)(1), italics added.) "This strict promptness requirement is not to be taken lightly, as a failure to comply constitutes forfeiture or an implied waiver of the disqualification. [Citation.] Thus, when a statement of objection is untimely filed, it is appropriate for the trial court to order it stricken. [Citations.]." (*Tri Counties Bank v. Superior Court*, *supra*, 167 Cal.App.4th at p. 1337.) "The purpose of the requirement that alleged grounds for disqualification be asserted at the earliest practicable opportunity is that ' " '[i]t would seem . . . intolerable to permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware and thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not.' " '[Citations.] In other words, '[a] party should not be allowed to gamble on a favorable decision and then raise such an objection in the event he is disappointed in the result.' [Citation.] Consequently, if a party is aware of grounds for disqualification of a judge but waits until after a pending motion is decided to present the statement of objection, the statement may be stricken as untimely." (*Id.* at pp. 1337–1338; see also *People v. Scott* (1997) 15 Cal.4th 1188, 1207.)[5]

---

[4] It is of no significance that the trial judge "denied" the challenge rather than "striking" it. Just as Everett did in titling his statement of disqualification, courts sometimes describe a party's filing under section 170.3, subdivision (c), as a "motion" to disqualify. (*Tri Counties Bank v. Superior Court* (2008) 167 Cal.App.4th 1332, 1336, fn. 3.)

[5] Defendant cites only one case on the subject, but that case does not support his position. (*Hayward v. Superior Court* (2016) 2 Cal.App.5th 10, review granted Nov. 9, 2016, S237174, review dism. and cause remanded, Mar. 1, 2017.) There, an attorney serving as a temporary judge failed to disclose professional relationships she had had

14

Before presenting the second statement on March 16, Everett represented that it "gives some additional facts after Your Honor had ruled" and "deals with proceedings after [the prior hearings]." It did not. Even a cursory reading of the second statement reveals that *all* of the purported facts it recites as a basis for recusing the trial judge related to events that had occurred nearly one month earlier, on February 21 and February 22, when the case was first assigned to Judge Grandsaert for trial. Indeed, the second statement largely repeated the same complaints that Everett had made in the first withdrawn challenge. Under the circumstances, the trial judge did not abuse his discretion in denying the challenge as untimely. Thus, contrary to defendant's arguments, the trial judge was not powerless to act, since once he properly struck defendant's statement of disqualification as untimely, "[t]here was nothing for an independent judge to review." (*Crawford v. JPMorgan Chase Bank, N.A.* (2015) 242 Cal.App.4th 1265, 1272; accord *PBA, LLC v. KPOD, Ltd.* (2003) 112 Cal.App.4th 965, 973 [because statement of bias was properly stricken according to the statutory procedure, trial judge's subsequent orders were valid].)

Even if Everett's second challenge had not been untimely, it is doubtful whether it was legally sufficient on its face. Everett repeated his complaint from the first challenge that Judge Grandsaert had declined to meet with counsel in chambers to discuss settlement—a complaint that, since it applied equally to the prosecutor, was hardly a basis for concluding that the judge harbored bias or prejudice toward him or his client. In the second statement, Everett added that the trial judge required Everett but not opposing

---

with lawyers in the case. After a party filed a statement of disqualification, the presiding judge of the superior court ordered the temporary judge disqualified, and ruled that she was deemed to have consented to her disqualification as a result of her failure to file a consent or verified answer to the statement. Here, in contrast, the trial judge did not fail to disclose any ground for disqualification, and he promptly struck the statement as untimely.

counsel to stand while addressing the court (a contention disproven by the record),[6] that the trial judge "seemed visibly upset" with Everett, that he admonished Everett for improperly engaging in ex parte communications with the court, and that he questioned Everett on why he was repeatedly late to court. All of these complaints are either false, trivial, or establish that the trial court understandably questioned Everett's misconduct. None of them, singly or collectively, comes close to supporting Everett's allegation that "the totality of circumstances here would lead anyone to believe that the Judge could not act fairly towards me, a black male."

## II. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN REMOVING DEFENSE COUNSEL.

In a single paragraph of his petition devoid of any citation to authority, defendant argued, "Case law is clear that a Judge does not have the ability to remove a retained criminal defense attorney." Defendant asserted "there is no precedent that would allow a court to deny a criminal defendant the counsel of their choosing, especially not under the circumstances here." In his reply brief, defendant for the first time makes three additional, inconsistent arguments. First, he concedes that there is authority providing that a court *may* relieve retained counsel, but contends it applies only if there is an established conflict of interest or if it is shown that the attorney is not physically able to represent a defendant. Second, he insists that the superior court lacks "jurisdiction" to remove defense counsel for incompetence, and that in such a situation, "the State Supreme Court is the only court having jurisdiction to take direct action." Third, he insists "there has never been a California case that has upheld the removal of privately retained defense counsel based on a trial judge's subjective determination that the defendant was not receiving 'competent' representation." Defendant's arguments are irreconcilable with controlling authority, and verge on the frivolous.

---

[6] The trial judge explained that he had required Everett to stand to address the court because Everett had repeatedly interrupted counsel when seated, and that he had required both counsel, not just Everett, to stand. The record supports both assertions.

16

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall . . . have the [a]ssistance of [c]ounsel." "[A]n element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him." (*United States v. Gonzalez-Lopez* (2006) 548 U.S. 140, 144.) However, "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." (*Wheat v. United States* (1988) 486 U.S. 153, 159.) Thus, the Sixth Amendment right to chosen counsel is "not absolute" (*Maxwell v. Superior Court* (1982) 30 Cal.3d 606, 613, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22), but rather is "circumscribed in several important respects." (*Wheat v. United States* (1988) 486 U.S. 153, 159.)

"A trial court may remove defense counsel, even over defendant's objections, 'in order to eliminate potential conflicts, ensure adequate representation, or prevent substantial impairment of court proceedings . . . .' [Citation.]." (*People v. Richardson* (2008) 43 Cal.4th 959, 995.) In particular, "a court has the discretion to remove counsel who cannot try his or her client's case at the appointed time." (*Williams v. Superior Court* (1996) 46 Cal.App.4th 320, 332.) Although it is generally either the defendant or his counsel who requests the removal of counsel, "[c]ounsel may also be relieved on the trial court's own motion, over the objection of the defendant or his counsel . . . ." (*People v. Cole* (2004) 33 Cal.4th 1158, 1187.) A trial court's authority to remove counsel does not depend on whether he or she is retained or is appointed counsel representing an indigent criminal defendant. (*People v. Strozier* (1993) 20 Cal.App.4th 55, 62 [holding that "the court had the right to remove appellant's privately retained counsel"].)

"On appeal, the trial court's removal of counsel is reviewed for abuse of discretion. ' "A court abuses its discretion when it acts unreasonably under the circumstances of the particular case." ' [Citation.] 'Inherent in the question whether a

trial court may disqualify a criminal defense attorney over the defendant's objection is the conflict between the defendant's preference to be represented by the attorney and the court's interest in "ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." ' [Citations.]." (*People v. Richardson*, *supra*, 43 Cal.4th at pp. 995–996.)

To be sure, we acknowledge that, as our high court has cautioned, " '[t]he involuntary removal of any attorney is a severe limitation on a defendant's right to counsel and may be justified, if at all, only in the most flagrant circumstances of attorney misconduct or incompetence when all other judicial controls have failed.' [Citations.]" (*People v. Daniels* (1991) 52 Cal.3d 815, 846; see also, e.g., *Maxwell v. Superior Court*, *supra*, 30 Cal.3d at p. 613 [California decisions "limit severely the judge's discretion to intrude on defendant's choice of counsel in order to eliminate potential conflicts, ensure adequate representation, or serve judicial convenience"].) Nevertheless, "[w]hile we recognize that courts should exercise their power to remove defense counsel with great circumspection [citations], they nevertheless retain the obligation to supervise the performance of defense counsel to ensure that adequate representation is provided." (*People v. McKenzie* (1983) 34 Cal.3d 616, 630, abrogated on other grounds in *People v. Crayton* (2002) 28 Cal 4th 346, 365.) For the following reasons, we conclude that on the unusual facts presented here, the trial court did not abuse its discretion in removing Everett as counsel.

At the threshold, we pause to identify the key constitutional and statutory provisions implicated by the trial court's ruling. (See *People v. Cole*, *supra*, 33 Cal.4th at p. 1188.) First, article I, section 29 of the California Constitution provides, "In a criminal case, the people of the State of California have the right to due process of law and to a speedy and public trial." Second, Penal Code section 1050 provides, in pertinent part, that "the people, the defendant, and the victims and other witnesses have the right to an expeditious disposition, and to that end it shall be the duty of all courts and judicial officers and of all counsel, both for the prosecution and the defense, to expedite these proceedings to the greatest degree that is consistent with the ends of justice." Finally,

Penal Code section 987.05 provides in pertinent part that "In cases where counsel, after making representations that he or she will be ready for . . . trial, and without good cause is not ready on the date set, the court may relieve counsel from the case and may impose sanctions upon counsel." Thus, contrary to defendant's contention that "[t]he sole statutory authority for the removal of counsel is Code of Civil Procedure section 284,"[7] Penal Code section 987.05 explicitly authorizes trial courts to relieve counsel whose lack of preparedness threatens to deprive other parties, including the People and the victims of a crime, of their right to a speedy trial.

Applying these principles, courts have upheld orders removing defense counsel, both retained and appointed, where counsel was unprepared on the assigned trial date or was providing inadequate representation. For example, in *People v. Strozier, supra*, defendant's trial for attempted murder was twice continued at his request. (20 Cal.App.4th at p. 59.) When the matter was called for trial, defense counsel requested a two-week continuance of the trial date on the grounds that his investigators were having difficulties subpoenaing three witnesses. (*Ibid.*) The trial court denied the request for continuance without prejudice, put the case over six days, and stated that defendant could renew his motion on the next date. (*Ibid.*) On that date, defendant again requested a two-week continuance on the same grounds. (*Ibid.*) Defense counsel advised the court that if the continuance was not granted, he would be "incompetent" to represent defendant. (*Ibid.*) The trial court offered to trail the matter until the end of the week if counsel would indicate that he would be ready to try the case at that time. (*Ibid.*) Counsel would not make such a commitment, and the trial court then relieved him as counsel for defendant and appointed another attorney. (*Ibid.*)

The Court of Appeal rejected defendant's argument that his due process rights were violated by the trial court's order relieving his retained counsel. (*People v. Strozier, supra*, 20 Cal.App.4th at p. 61.) "The concept of due process, as it relates to the right of

_____

[7] Penal Code section 987.05 was enacted by initiative in 1990 (see *Raven v. Deukmejian* (1990) 52 Cal.3d 336, 345), after the 1968 decision upon which defendant primarily relies.

19

counsel, must be weighed against '. . . other values of substantial importance, such as assurance of an orderly and speedy determination of criminal charges . . . .' [Citation.]" The court pointed to section 1050 as embodying the Legislature's recognition of the importance of a prompt resolution of criminal matters, "not only from the defendant's viewpoint, but also for the benefit of the people of the State of California and victims of criminal activity." (*Ibid.*) It held first that the trial court did not abuse its discretion in denying defendant's request for a continuance. (*Id.* at pp. 61–62.) It then squarely held that the court had the right to remove defendant's privately retained counsel. (*Id.* at p. 62.) "A trial court has discretion to remove counsel on its own motion when removal is necessary in order to prevent disruption of the orderly processes of justice under the circumstances of the particular case." (*Ibid.*) As it explained, removal of defendant's counsel did not violate defendant's due process rights:

> "At the hearing, [defendant's] counsel represented that he would be 'incompetent' to proceed to trial even if the case were trailed four more days, and he could not give the trial court any assurances that he would be ready to proceed to trial at that time. Since [defendant's] counsel, by his own admission, was incompetent to try the case within the set trial date or dates, the trial court had little other alternative except to relieve him."

(*Ibid.*; see also, e.g, *People v. Avila* (2009) 46 Cal.4th 680, 695–696 [trial court properly removed appointed counsel in capital case to prevent substantial impairment of the court proceedings where, *inter alia*, counsel sought to continue trial but "gave no assurance he would be prepared for trial on [continued date], but rather only represented that he would be ready at some indeterminate point *after* a year had passed"]; *People v. Mungia* (2008) 44 Cal.4th 1101, 1119–1125 [trial court did not abuse its discretion when it removed public defender as defendant's counsel of record, based on its conclusion that the public defender would not bring defendant's case to trial within a reasonable time]; *People v. Cole*, *supra*, 33 Cal.4th at p. 1188 [trial court did not abuse its discretion in removing alternate defense counsel as counsel of record where, before doing so, it granted several defense motions for continuances and not unreasonably viewed with skepticism counsel's latest assurances of a readiness date]; cf. *People v. Freeman* (2013) 220 Cal.App.4th 607,

610 [court of appeal, on its own motion, removed retained counsel, whose briefing had "unreasonably interfered with and disrupted the orderly process" of the appeal].)

Defendant relies heavily on *Smith v. Superior Court* 68 Cal.2d 547, a 1968 decision in which our Supreme Court ruled that a trial judge does not have "the power to remove a court-appointed defense attorney, over the objections of both the attorney and the defendant, on the ground of the judge's subjective opinion that the attorney is 'incompetent' because of ignorance of the law to try the particular case before him." (*Id.* at p. 549.) In a more recent decision that defendant does not cite, however, our high court ruled to that the extent that the holdings in *Smith* and in three other decisions were based on the federal constitution, they had been "superseded" by the Supreme Court's decision in *Wheat v. United States, supra.* (*People v. Jones* (2004) 33 Cal.4th 234, 243–244.) Further, in *Jones*, the California Supreme Court squarely held that when a trial court removes a defense attorney because of a potential conflict of interest, "the court is seeking to protect the defendant's right to competent counsel. In such circumstances, there is no violation of the right to counsel guaranteed by article I, section 15 of the state Constitution." (*Id.* at pp. 244–245.) Thus, *Smith* is no longer good authority. (See also *Center Foundation v. Chicago Ins. Co.* (1991) 227 Cal.App.3d 547, 557 ["For 22 years, the trial and appellate courts of this state have recognized that *Smith* should be limited to its facts"].) In any event, *Smith*'s holding was limited to court-appointed counsel. (See *id.* at p. 245, fn. 3 ["We need not decide whether the state Constitution permits a defendant to insist on being represented by a *retained* attorney who has a potential conflict of interest, for here defendant's attorney was appointed by the court, not privately retained by defendant"].)

Here, we conclude that the trial court did not abuse its discretion in removing Everett as counsel for two reasons, either of which independently justified its action. *First*, the trial court found that Everett was not prepared for trial and was not providing adequate representation to defendant. There is ample evidence in the record before us to support that finding. On the first day set for trial, Everett had not yet retained an expert witness whose testimony, he asserted, would be critical—indeed central—to his client's

21

defense. Indeed, he asserted, such testimony "would be the crux of the defense." "The whole trial is probably going to depend on it. It will undoubtedly depend on this whole issue." Yet when questioned by the trial court as to why he hadn't pursued the matter earlier, Everett had no answer. And when the trial court then gave Everett additional time to file a motion explaining the need for the expert testimony, Everett filed what he described as a "boilerplate motion" that addressed an entirely different issue: false eyewitness identification of suspects. Nor had Everett subpoenaed a third-party witness whose testimony he asserted would be essential to impeach the alleged victim's testimony.

Defendant asserts that unlike *Strozier*, where counsel admitted his own incompetence to represent the defendant unless a continuance was granted, here Everett "had explicitly stated that he was ready for trial and intended to win said trial." Nowhere, however, does defendant address Everett's assertions to the trial court that Zapata's testimony would be "the time bomb that us on the defense have been waiting for" and that "in my view, as Mr. Magana's defense counsel, it is absolutely 110 percent necessary that we get this individual into court." Nor does he explain how it was that Everett could have been "ready for trial" when he had just told the trial judge, almost in the same breath, that expert testimony from an expert whom he had not yet retained "would be the crux of the defense" and that "[t]he whole trial is probably going to depend on it. It will undoubtedly depend on this whole issue." If those representations were true, Everett, *by his own admission*, was not prepared on the day set for trial to competently represent defendant. As a result, "the trial court had little other alternative except to relieve him." (*People v. Strozier, supra,* 20 Cal.App.4th at p. 62; see also Pen. Code, § 987.05; see generally Burnett, *Ethical Dilemmas Confronting A Felony Trial Judge: To Remove Or Not To Remove Deficient Counsel* (2000) 41 So. Tex. L.Rev. 1315, 1319, fn. omitted [arguing that judges should be authorized to remove counsel, or to consider doing so, "when counsel's performance raises serious questions about the quality of the representation being provided"].)

Second, the trial court also was justified in removing Everett to prevent substantial impairment of the court proceedings. Although the trial of the case had been continued four previous times, the trial court understandably had no confidence that Everett ever would be ready to proceed with trial in a timely fashion. The record makes clear that the trial judge was entirely justified in reaching that conclusion. Among other things:

- Everett had learned months earlier of a key impeaching witness, but as of the first day of trial, still had not served that witness with a subpoena to testify or, apparently, made any effort to do so;

- Everett claimed that expert testimony regarding language and false confessions would be critical to challenging his client's confession, yet as of the first day of trial he still had not retained an expert witness or taken the necessary steps to have one appointed;

- The brief Everett belatedly filed regarding the admissibility of such expert testimony addressed an entirely different (and irrelevant) issue, that of eyewitness identification;

- Everett appeared on the first day of trial unprepared to file a key motion to suppress his client's confession, written in limine motions, a witness list, or proposed jury instructions;

- Everett engaged in improper ex parte communications with the court; and

- Everett consistently appeared late for court appearances.

We could go on, but the point is made: there was ample reason for the trial court to conclude both that Everett was not providing Magana with effective representation, and that it was doubtful that he would be prepared by the time of the next trial date to competently try the case. Under the circumstances, it did not abuse its discretion in removing him as counsel.

A trial judge faced with a situation like this one "is placed in a difficult dilemma: 'If a . . . court agrees to the . . . representation, and the advocacy of counsel is thereafter impaired as a result, the defendant may well claim that he did not receive effective

assistance. [Citation.] On the other hand, a . . . court's refusal to accede to the . . . representation may result in a challenge such as petitioner's in this case.' [Citation.]" (*People v. Jones*, *supra*, 33 Cal.4th at p. 241.) We recognize that the trial judge removed Everett as counsel against defendant's wishes. "But the trial court need not *always* accommodate the defendant's preference. 'The essential aim "is to guarantee 'an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.' " ' [Citations.]" (*People v. Mungia*, *supra*, 44 Cal.4th at p. 1124.) The trial judge in this case struck the proper balance in light of the competing concerns at stake.

### III. DEFENSE COUNSEL'S MISCONDUCT WARRANTS REFERRAL TO THE STATE BAR.

We address one final topic: whether Everett's conduct warrants referral to the State Bar for investigation and possible disciplinary action. We are compelled to conclude that it does.

A court "shall notify the State Bar" whenever, *inter alia*, "a modification or reversal of a judgment in a judicial proceeding is based in whole or in part on the misconduct, incompetent representation, or willful misrepresentation of an attorney." (Bus. & Prof. Code, § 6086.7, subd. (a)(2).) We believe that the misconduct at issue here is sufficiently serious that the State Bar should be made aware of it. (*See In re Aguilar* (2004) 34 Cal.4th 386, 389-394 [referring attorneys held in contempt for failing, without adequate justification, to appear for oral argument before California Supreme Court, and for lying to court].

Judge Grandsaert's findings here, which we affirm, establish a clear violation of Rule 3-110 of the Rules of Professional Conduct [failing to act competently], and at least a prima facie violation of Rule 5-200(B) and Business & Professions Code section 6068, subdivision (d) [misrepresentation to a judge of fact or law by artifice or false statement]. What we see on this record may even have provided the basis for a contempt citation had Judge Grandsaert chosen to proceed in that fashion. (See *Chula v Superior Court* (1962)

57 Cal.2d 199, 205 [attorney's failure to appear at scheduled time without valid excuse is a species of direct contempt and may be punished summarily].) But separate and apart from these issues, of most serious concern to us is Everett's conduct in repeatedly accusing the experienced trial judge and several of his colleagues of racial animus toward him and his client, and in utilizing those accusations as a basis for seeking to disqualify those judges from hearing the case, without any apparent good faith basis for doing so.

Like any other verified pleading, a statement of disqualification under sections 170.1 and 170.3 must not be presented primarily for an improper purpose, such as to cause unnecessary delay, and its allegations and other factual contentions must have evidentiary support.[8] (§ 128.7, subd. (b)(1),(3).) Here, the record strongly suggests to us that neither requirement was met. We are unable to find any substantial factual basis in the record for Everett's accusations and, as discussed above, neither of the statements he filed discloses any such basis on its face. Further, it is readily apparent to us that Everett repeatedly used challenges for cause to disqualify (or to attempt to disqualify) judges as a delaying tactic, rather than out of any facts that could support a good faith belief that the challenged judges actually harbored any bias or prejudice against him or his client.

This is particularly troubling because "a motion to recuse a judge is not just another procedural or evidentiary motion. It is a direct attack on one of the basic

---

[8] In this regard, a challenge for cause is very different from a peremptory challenge under section 170.6. Section 170.6 "allows for the disqualification of judges based upon the mere ' "belief of a litigant" that he cannot have a fair trial before the assigned judge.' [Citations.]" (*People v. Superior Court (Tejeda)* (2016) 1 Cal.App.5th 892, 899.) "The right is 'automatic' in the sense that a good faith *belief* in prejudice is alone sufficient, proof of facts showing actual prejudice not being required." (*McCartney v. Commission on Judicial Qualifications* (1974) 12 Cal.3d 512, 531, overruled on another ground in *Spruance v. Commission on Judicial Qualifications* (1975) 13 Cal.3d 778, 799, fn. 18.) A challenge for cause under section 170.3, in contrast, confers no such automatic right. Rather, if the challenged judge files a written verified answer, it must be heard and determined by another judge, who may "hear evidence on any disputed issue of fact." (§ 170.3, subd. (c)(6).) It follows that a lawyer who files such a challenge must have a good faith factual basis for doing so, and that the factual basis must appear on the face of the statement. (§ 170.4, subd. (b).)

principles of our judicial system, the impartiality of trial courts. If such a motion is made when a case is close to trial, it necessarily calls into question the administration of justice. And the making of such a motion impacts unfavorably upon the public's perception of the administration of justice." (*In re Order To Show Cause* (N.D. Cal. 1990) 741 F.Supp. 1379, 1381.) We recognize, of course, that "[a]ttorneys owe high duties to their clients to defend their cases fully, vigorously, and even with arguments which might be offensive or ultimately unsuccessful. This is particularly true in criminal cases, where the clients' liberties are at stake, and where the adequacy of the attorneys' representation can raise constitutional issues." (*Ibid.*) But "defense attorneys are also officers of the court and owe duties, which can be even higher duties, to the administration of justice." (*Ibid.*) "A motion to recuse a trial judge is inherently offensive to the sitting judge because it requires the moving party to allege and substantiate bias and prejudice—traits contrary to the impartiality expected from a mortal cloaked in judicial robe. Yet the fair administration of justice requires that lawyers challenge a judge's purported impartiality when facts arise which suggest the judge has exhibited bias or prejudice. The appropriate mechanism for such a challenge is a motion to recuse." (*U.S. v. Cooper* (1st Cir. 1989) 872 F.2d 1, 4, fn. omitted.)

Thus, an attorney who believes that a judge is biased or prejudiced against him or his client unquestionably is entitled to seek that judge's recusal by filing a statement of disqualification—"*so long as* his affidavit in support of the motion to recuse was made in good faith and made no factual misrepresentations." (*U.S. v. Cooper*, *supra*, 872 F.2d at p. 4; accord *In re Order To Show Cause*, *supra*, 741 F.Supp. at p. 1382.) Nor may such a challenge be made with an improper purpose, such as delay. Because, as we discuss above, the record here strongly suggests to us that Everett disregarded these fundamental precepts, we have no alternative but to refer him to the State Bar for investigation and possible disciplinary action.

## DISPOSITION

We deny the petition for writ of mandate and/or prohibition and the supplemental petition. This denial becomes final as to this court 30 days after filing. Further, pursuant to Business and Professions Code section 6086.7, subdivision (a)(2), the clerk of this court is directed to forward to the State Bar a copy of this opinion.

_____
Schulman, J.<sup>*</sup>


We concur:


_____
Streeter, Acting P.J.



_____
Reardon, J.

_____

<sup>*</sup> Judge of the Superior Court of California, City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*Magana v. The Superior Court of San Mateo County* (A153981)

*Magana v. The Superior Court of San Mateo County* (A153981)

| | |
|---|---|
| Trial Court: | San Mateo County Superior Court |
| Trial Judge: | Honorable John L. Grandsaert |
| Counsel for Petitioner Eudoro Magana: | Law Offices of Daniel Everett and Daniel Everett. |
| Counsel for Respondent The Superior Court of San Mateo County: | No appearance. |
| Counsel for Real Party in Interest The People: | Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Laurence K. Sullivan, Supervising Deputy Attorney General, René A. Chacón, Supervising Deputy Attorney General, Stephen M. Wagstaffe, District Attorney for San Mateo County, Sharon K. Cho, Deputy District Attorney for San Mateo County. |